NOTE: This opinion is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**STEVEN CHU, SECRETARY OF ENERGY,**
*Appellant,*

**v.**

**THE BOEING COMPANY,
(SUCCESSOR-IN-INTEREST OF ROCKWELL
INTERNATIONAL CORPORATION),**
*Appellee.*

------------------------------------------------

**THE BOEING COMPANY**,
**(SUCCESSOR-IN-INTEREST OF ROCKWELL
INTERNATIONAL CORPORATION),**
*Appellant,*

**v.**

**STEVEN CHU, SECRETARY OF ENERGY,**
*Appellee.*

---

2011-1304, -1317

---

Appeal from the Civilian Board of Contract Appeals in Nos. 337, 338, 339, and 978, Administrative Judge R. Anthony McCann.

---

Decided: November 20, 2012

DOMENIQUE KIRCHNER, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for Secretary of Energy. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and BRYANT G. SNEE, Deputy Director.

JAMES J. GALLAGHER, McKenna Long & Aldridge LLP, of Los Angeles, California, argued for The Boeing Company. On the brief was S. JEAN KIM, Chadbourne & Parke LLP, of Los Angeles, California.

Before BRYSON, O'MALLEY, and WALLACH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* WALLACH.
Opinion concurring-in-part and dissenting-in-part filed by *Circuit Judge* BRYSON.

WALLACH, *Circuit Judge*.

This case arises under the Contract Disputes Act, 41 U.S.C. §§ 7101-09. The Department of Energy ("DOE") appeals and Rockwell International Company ("Rockwell") cross-appeals from decisions of the Civilian Board of Contract Appeals ("Board") that certain litigation defense costs are allowable under the parties' management and operating contracts ("contracts") and thus may be recovered by Rockwell.[1] We affirm-in-part and reverse-in-part the Board's determinations.

---

[1] The Boeing Company ("Boeing") is the successor-in-interest of Rockwell. All references herein to Rockwell and Boeing are interchangeable.

BACKGROUND

A. The Contracts

Beginning in 1975, DOE entered into a series of contracts with Rockwell for the management, operation, and maintenance of the government-owned Rocky Flats Nuclear Weapons Plant in Colorado ("Rocky Flats"). *Abraham v. Rockwell Int'l Corp.*, 326 F.3d 1242, 1244 (Fed. Cir. 2003).[2]  Private industrial firms have managed and operated the facility since its construction in the early 1950s. *Id.* at 1245.  The contracts governing the management and operation of the facility require the Government, not the private firms, to assume almost all operational and financial risks because of the inherent danger in manufacturing nuclear weapon components. *Id.* Rockwell's contracts contain cost-reimbursement provisions that enable Rockwell to recover all allowable costs. *Id.*  The dispute here centers on whether certain costs incurred by Rockwell in defending itself in litigation are recoverable.

The two contracts currently at issue are the 1986 contract effective from January 1, 1986 until December 31, 1988 and the 1989 contract effective from January 1, 1989 until December 31, 1989.[3]  They were both cost-plus-award-fee contracts. 48 C.F.R. § 16.405-2.[4]  Both contracts

---

[2]    Previously, in *Abraham*, we addressed a dispute between the same parties regarding the allowability of costs incurred in defense of allegations that never ripened into criminal charges.  *See infra* n. 7.

[3]    The pertinent provisions in the 1986 and 1989 contracts are identical except for the Fines and Penalties Clause, and the differences between these two clauses are minor and do not impact our analysis.

[4]    48 C.F.R. § 16.405-2 provides:

    A  cost-plus-award-fee  contract  is  a  cost-reimbursement contract that provides for a fee

provided that "allowable cost shall not include the cost of any item described as unallowable . . . ."

Effective January 1, 1987, the parties adopted Modification M097, which added clause (e)(32) to the 1986 contract ("clause (e)(32)"), and provided as follows:

(e) Items of Unallowable Costs. The following items of costs are unallowable under this contract to the extent indicated:

. . . .

(32) Costs incurred in defense of any civil or criminal fraud *proceeding* or similar *proceeding* (including filing of any false certification) brought by the Government where the Contractor, its agents or employees, is found liable or has pleaded *nolo contendere* to a charge of fraud or similar *proceeding* (including filing of a false certification).

(emphasis added).[5]

___

consisting of (1) a base amount fixed at inception of the contract, if applicable and at the discretion of the contracting officer, and (2) an award amount that the contractor may earn in whole or in part during performance and that is sufficient to provide motivation for excellence in the areas of cost, schedule, and technical performance. See 16.401(e) for the requirements relative to utilizing this contract type.

[5] Clause (e)(32) is virtually identical to provisions of the Department of Defense Authorization Act, 1986 ("the 1985 Act"), Pub. L. No. 99-145, 99 Stat. 583,683,774-75 (November 8, 1985). The 1985 Act bars a contractor's recovery of 10 types of costs, and states:

Effective January 1, 1989, the parties adopted Modification M124, which provides:

(d) Items of Allowable Cost. Subject to the other provisions of this clause, the following items of cost of work done under this contract shall be allowable to the extent indicated:

. . . .

(16) All cost incurred by the Contractor with respect to any and all liabilities, claims, demands, damage costs, or penalties (such as civil sanctions including fines), arising out of, or related to *environmental, safety and health activities*, including costs incurred with respect to investigation, removal, remedial action, ground and surface water or other clean-up of hazardous, toxic or contaminated material(s), except for those costs that result from conduct identified in subparagraph (e)(17)(ii) of the clause entitled, "Allowable Costs, Base Fee and Award Fee."

---

(e)(1) The following costs are not allowable under a covered contract:
. . . .
(C) Costs incurred in defense of any civil or criminal fraud proceeding or similar proceeding (including filing of any false certification) brought by the United States where the contractor is found liable or has pleaded *nolo contendere* to a charge of fraud or similar proceeding (including filing of a false certification).
*Id.* The Board turned to this act and its legislative history in interpreting the contract provisions at issue. *See, e.g., Boeing Co. v. Dep't of Energy*, CBCA 337, 338, 339, 978, 11-1 BCA ¶ 34,634 (December 14, 2010).

("Environmental Costs Clause") (emphasis added). Subparagraph (e)(17)(ii) expressly excludes costs that "result from willful misconduct or lack of good faith on the part of any of the Contractor's managerial personnel."

B. The *Stone* Suit

On June 25, 1987, Mr. James Stone[6] informed the Federal Bureau of Investigations of alleged environmental crimes that occurred at Rocky Flats; the Department of Justice began investigating in 1988.[7]

On July 5, 1989, Mr. Stone, instituted a *qui tam* action alleging violations of the FCA against Rockwell in the United States District Court for the District of Colorado. However, on December 20, 1996, the Government and Mr. Stone (collectively, "plaintiffs") filed a joint amended complaint alleging violations of the FCA (Count 1), common law fraud (Count 2), breach of contract (Count 3), payment by mistake (Count 4), and unjust enrichment (Count 5); Mr. Stone additionally asserted other FCA violations (Count 6). Plaintiffs contended that during certain time periods, Rockwell violated the FCA by using false or fraudulent statements to obtain its award fees and operating costs. Following a jury trial, the district

---

[6] From November 1980 through March 1986, Mr. Stone worked as an engineer at the Rocky Flats. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 460 (2007).

[7] In response to these investigations, Rockwell retained legal counsel both for itself and for individual employees to defend against the allegations. Some of the allegations never ripened into criminal charges. In a previous case before this court, we affirmed the Board's decision that costs incurred defending against allegations that never ripened into criminal charges were allowable; we held that "the legal fees in defense against Uncharged Conduct are recoverable because they are within the scope of allowable costs under the Environmental Costs Clause." *Abraham*, 326 F.3d at 1254.

court entered judgment against Rockwell solely for Count 1 for certain time periods. The judgment provided for plaintiffs' recovery of $4,172,327.40 (three times the jury award), and the Government's recovery of a civil penalty of $15,000.00. The Tenth Circuit affirmed these awards. *United States v. Rockwell Int'l Corp.*, 282 F.3d 787 (10th Cir. 2002).

On April 4, 2006, Rockwell filed a petition for a writ of certiorari. The only issue before the Supreme Court was "whether respondent Mr. Stone was an original source" for purposes of standing to bring suit. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 460 (2007). An "original source" is "an individual who [1] has direct and independent knowledge of the information on which the allegations are based and [2] has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B). This question pertained only to FCA violations involving pondcrete.[8] On March 27, 2007, the Court held that Mr. Stone was not an "original source" with respect to FCA violations involving pondcrete. *Rockwell*, 549 U.S. at 479. Therefore, the Court found that the district court lacked jurisdiction to enter judgment in favor of Mr. Stone, and reversed the Tenth Circuit's holding to the contrary. *Id.*[9]

---

[8]    Pondcrete is a mixture of sludge from solar ponds and cement.

[9]    With regards to the Government's actions in the case, specifically its intervening and filing of a joint amended complaint with Stone, Justice Scalia stated for the majority:

Does this conclusion cast into doubt the courts' jurisdiction with respect to the Government as well? . . . . Not even petitioners have suggested the bizarre result that the Government's judgment must be set aside. It is readily enough

On June 18, 2007, the Tenth Circuit affirmed the judgment in favor of the Government for the reasons articulated in its prior opinion, *United States v. Rockwell Int'l Corp.*, 282 F.3d 787 (10th Cir. 2002), but remanded with directions to vacate the portion of the judgment entered in favor of Mr. Stone and dismiss his portion of the case. *United States v. Rockwell lnt'l Corp.*, 492 F.3d 1157 (10th Cir. 2007).

C. *Stone* Defense Costs

At the beginning of the *Stone* suit, when Rockwell was served with Mr. Stone's Complaint on November 13, 1995, Rockwell submitted to DOE vouchers for payment of related defense costs ("*Stone* defense costs"). On April 22, 1993, DOE stated it would provisionally reimburse Rockwell and "reserve[] the right to evaluate the final outcome of the case and seek reimbursement from Rockwell for any amount paid . . . ." A160. After conditionally reimbursing Rockwell $4,060,669.03 in *Stone* defense costs, DOE notified Rockwell on December 6, 1995, that those costs were unallowable pursuant to the DOE and Rockwell contracts.

In May 2005, Rockwell requested a contracting officer's final decision, seeking $11,344,081.14 as reimbursement for the *Stone* defense costs incurred from November 14, 1995, to December 31, 2004. On September 30, 2005, the contracting officer issued a final decision denying Rockwell's claim. Additionally, the contracting officer

---

avoided, as common sense suggests it must be, by holding that an action originally brought by a private person, which the Attorney General has joined, becomes an action brought by the Attorney General once the private person has been determined to lack the jurisdictional prerequisites for suit.

*Rockwell*, 549 U.S. at 478.

rendered a final decision granting the Government's claim against Rockwell for recovery of $4,060,669.03, the amount that DOE provisionally advanced as reimbursement for Rockwell's *Stone* defense costs, plus interest. Rockwell appealed this final decision along with other related later decisions to the Board which were consolidated into various appeals before the Board.

D. Board Decisions

From July 9, 2007 to March 8, 2011, six Board decisions were issued which currently are being challenged by one or both parties.[10] The Board considered whether Rockwell's costs incurred defending *Stone* were unallowable under clause (e)(32) and held that such costs could be apportioned on a claim-by-claim basis and determined that: (1) costs relating solely to claims where the Government was successful are unallowable; (2) costs relating solely to claims where Rockwell was successful are allowable under clause (e)(32); and (3) costs relating to common costs, *i.e.*, costs incurred defending against both claims where Rockwell was successful and was found liable, are unallowable.

---

[10]    *See Boeing Co. v. Dep't of Energy*, CBCA 337, 338, 339, 2007 WL 5035796 (July 9, 2007); *Boeing Co. v. Dep't of Energy*, CBCA 978, 08-1 BCA ¶ 33,822 (March 21, 2008); *Boeing Co. v. Dep't of Energy*, CBCA 978, 08-2 BCA ¶ 33,893 (June 23, 2008); *Boeing Co. v. Dep't of Energy*, CBCA 337, 338, 339, 978, 09-1 BCA ¶ 34,026 (December 10, 2008); *Boeing Co. v. Dep't of Energy*, CBCA 337, 338, 339, 978, 11-1 BCA ¶ 34,634 (December 14, 2010); *Boeing Co. v. Dep't of Energy*, CBCA 337, 338, 339, 978, 11-1 BCA ¶ 34,703 (March 8, 2011).

DOE filed a timely appeal. Rockwell cross-appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).[11]

## DISCUSSION

The Board's factual determinations will be set aside if arbitrary, capricious, so grossly erroneous as to necessarily imply bad faith, or not supported by substantial evidence. 41 U.S.C. § 7107(b)(2). The Board's determinations of questions of law, including interpretation of contracts, statutes and regulations, are subject to *de novo* review. *Lear Siegler Servs. v. Rumsfeld*, 457 F.3d 1262, 1265-66 (Fed. Cir. 2006).

We first address the term "proceeding" in clause (e)(32) and this clause's interaction with the Environmental Costs Clause within the contract. Next, we turn to the *Stone* defense costs incurred by Rockwell after Mr. Stone filed the now reversed *qui tam* action and before the Government intervened. Finally, we turn to the "common costs" incurred by Rockwell in defending against claims during the period of litigation after the Government intervened where Rockwell was successful on some claims but was found liable on others.

A. "Proceeding" in clause (e)(32) and the Environmental Costs Clause

The *Stone* jury found Rockwell liable on three FCA violations against the Government. Whether Rockwell's costs of defending this lawsuit are allowable under its

---

[11] Previously, the parties appealed to this court; however, we held that because the Board had yet to determine whether clause (e)(32) allows Rockwell to recover common costs, the Board's decision was not final, and we therefore lacked jurisdiction. *Chu v. Boeing Co.*, 375 F. App'x. 10, 12 (Fed. Cir. 2010).

contracts with DOE rests in large part on the proper interpretation of two provisions found in those contracts: clause (e)(32) and the Environmental Costs Clause.

We find that a plain reading of clause (e)(32) suggests that the Board's more limited reading of "proceeding" found within this provision is correct. Read in its entirety, the clause disallows

> [c]osts incurred in defense of any civil or criminal fraud proceeding or similar proceeding (including filing of any false certification) brought by the Government where the Contractor, its agents or employees, is found liable or has pleaded *nolo contendere* to a charge of fraud or similar proceeding (including filing of a false certification).

DOE contends that in "Clause (e)(32), the choice of the word 'charge,' which Rockwell agrees means a claim, stands in contrast to the choice of the word 'proceeding.'" Response and Reply Br. of the Secretary of Energy at 8 (internal citation omitted). We disagree. In this context, "charge of fraud" is immediately followed by "or similar proceeding," illustrative that a "charge of fraud" is a type of "proceeding." This indicates that a "proceeding" means something less than an entire litigation action as DOE contends. Additionally, "proceeding" is twice followed by "including filing of any false certification," which again is a claim, not an entire case.[12] However, as pointed out by

---

[12]   We will not adopt the interpretation of the word "proceeding" from our prior case law that dealt with a different statute and a different contract. In *Rumsfeld v. General Dynamics Corporation*, 365 F.3d 1380 (Fed. Cir. 2004), we held that, in the context of section 2324(k) of the Major Fraud Act (10 U.S.C. § 2324), the Armed Services Board of Contract Appeals incorrectly "required the apportionment of legal costs for defending against differ-

the DOE, "proceeding" is also joined to the words "civil" and "criminal," two types of actions, not two types of claims.[13]

---

ent claims with different outcomes within a single proceeding." *Id.* at 1381. In *General Dynamics*, which involved awarding government subcontracts in exchange for bribes and kickbacks, we determined that "proceeding" "must be given a broad meaning, such that it includes all claims or causes of action within a particular case, action or proceeding." *Id.* at 1386. We found the text, other sections of the Major Fraud Act, and the legislative history to support this interpretation. *Id. General Dynamics* presented a situation unlike the one currently before us. In *General Dynamics*, we did not define "proceedings" for all future purposes; unlike here, the relevant text, context, and legislative history supported a broad reading of the term "proceeding," as it was used in 1988 in section 2324(k) of the Major Frauds Act. Additionally, as we stated clearly in *General Dynamics*, the "holding of this case is limited to its facts" and specifically to situations "where there is a disposition of proceeding by consent or compromise," a situation not currently before us. *Id.* at 1385 n.2, 1387.

[13] The dissent finds further interpretation beyond the plain meaning warranted and turns to the 1985 Act, its legislative history, background, and regulatory interpretation in order to determine the proper definition of "proceeding." However, reading the contract as a whole, it is unnecessary to consider extrinsic evidence to interpret the term at issue. *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (citing *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996)) ("Where, as here, the provisions of the Agreement are phrased in clear and unambiguous language, they must be given their plain and ordinary meaning, and we may not resort to extrinsic evidence to interpret them . . . . The Agreement must be considered as a whole and interpreted so as to harmonize and give reasonable meaning to all of its parts.").

Even if the proper definition of "proceeding" is ambiguous, it is "a fundamental precept of common law that

When construing a contract containing conflicting terms, general rules of interpretation apply. It is a general rule of contract interpretation that terms should not be interpreted so as to render them ineffective or super-

---

the intention of the parties to a contract control its interpretation." *Beta Sys. Inc. v. United States*, 838 F.2d 1179, 1185 (Fed. Cir. 1988) (citing *Firestone Tire & Rubber Co. v. United States*, 444 F.2d 547, 551 (Ct. Cl. 1971); *see also Alvin Ltd. v. United States Postal Serv.*, 816 F.2d 1562, 1565 (Fed. Cir. 1987) ("In the case of contracts, the avowed purpose and primary function of the court is the ascertainment of the intention of the parties."). In this case, as we recognized in *Abraham*, the contracts were negotiated with an express DOE intent to assume almost all liability: "Because of the inherent danger in manufacturing nuclear weapons components, the [Plant] contracts required the government to assume virtually all operational and financial risks in performing the contracts." 326 F.3d at 1245. *See, e.g., Rockwell Int'l Corp.* EBCA Nos. C-9509187, C-9509220, C-9509221 (October 31, 2001) ("Typically, at least at the times relevant here, M&O contracts allocated virtually all operational and financial risks to the United States Government. Limiting contractor risk has always been a prerequisite to engaging suitable companies as contractors. DOE officials recently recognized that '[i]f the Department did not fully indemnify its contractors. . . . the risks to the contractors would be so great, that the Department would be unable to find qualified contractors willing to run the Department's facilities.'"); *see also* A984, 1000, 1033-41. This intent counsels for a more limited meaning of "proceeding," consistent with our above analysis.

While it is true that congressional intent is also relevant to ascertaining the contracting parties' intent when statutory provisions are incorporated into a contract, *Roedler v. Dep't of Energy*, 255 F.3d 1347, 1352 (Fed. Cir. 2001), the intent behind the 1985 Act of Congress cannot outweigh the plain meaning of the provision, which is evident when the provision is read in context. Nor does the legislative history outweigh other persuasive evidence of the parties' contractual intent.

fluous. *Lockheed Martin IR Imaging Sys. v. West*, 108 F.3d 319, 322 (Fed. Cir. 1997); *see also* Restatement (Second) of Contracts § 203(a) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect"). The narrow reading of clause (e)(32) adopted by the Board is necessary to avoid conflict with other provisions of the contract, particularly the Environmental Costs Clause, which clearly provide for reimbursement of costs incurred in defending claims related to environmental, safety, and health activities except in cases of willful misconduct or lack of good faith.

The Environmental Costs Clause states that "all cost incurred . . . with respect to any and all liabilities, claims, demands, damage costs, or penalties (including fines), arising out of, or related to environmental, safety and health activities" are allowable for reimbursement. As we have previously stated concerning this clause:

> The clause refers to "all costs . . . with respect to any and all . . . penalties (such as civil sanctions including fines), arising out of, or related to environmental . . . activities." Further, it expressly refers to the costs incurred "with respect to investigation." Tellingly, the clause specifically excludes "costs that result from conduct identified in subparagraph (e)(17)(ii)." That subparagraph refers to costs that "result from willful misconduct or lack of good faith on the part of any of the Contractor's managerial personnel." The limited nature of this exclusion suggests a broad scope of coverage where, as here, there is no claim of willful misconduct or lack of good faith by managerial personnel.

*Abraham*, 326 F.3d at 1252-1253.

In *Abraham* we found that the Environmental Costs Clause prevailed over the Contesting Actions Clause[14] in the context of allegations against Rockwell that had not ripened to criminal charges. *Id.* at 1254. *Abraham* is informative in this context. As in this case, we were confronted with a conflict between the Environmental Costs Clause and a clause under "Items of Unallowable Costs." In *Abraham*, we rejected DOE's argument that the unallowable costs provision at issue excluded costs allowable under the Environmental Costs Clause because instead of "partially limit[ing] the coverage of the [Environmental Costs Clause]," the Government's reading "effectively . . . rewr[o]te the clause" to render it "entirely inapplicable to all proceedings brought under the federal environmental laws, an area that the clause was explicitly drafted to cover." 326 F.3d at 1253.

Similarly here, DOE's interpretation would render the Environmental Costs Clause completely inapplicable to an entire action involving liabilities and claims related to environmental, safety and health activities whenever, as part of that entire action, liability was found for fraud or claims similar to fraud. This is an area the Environmental Costs Clause was explicitly drafted to cover. *See* A1054-55 (the Environmental Costs Clause covers "any

---

[14] The Contesting Actions Clause makes unallowable the following:
Legal, accounting, and consulting services and related costs incurred in connection with the preparation and issuance of stock rights, organization or reorganization, prosecution or defense of antitrust suits, prosecution of claims against the United States, contesting actions of [sic] proposed actions of the United States, and prosecution or defense of patent infringement litigation.
*Abraham*, 326 F.3d at 1248 n.3.

and all liabilities [and] claims . . . arising out of, or related to environmental, safety and health activities"). By contrast, there is nothing in the text of clause (e)(32) or elsewhere in the record that indicates clause (e)(32) was explicitly drafted to cover claims related to environmental, safety and health activities or any claims that are not "fraud... or similar proceeding[s]" and where Rockwell was not "found liable." Indeed, the "proceedings" as articulated in this clause are limited to "fraud" proceedings and therefore renders themselves distinct from other types of proceedings, *e.g.*, those related to environmental claims.

DOE argues at length that there are adequate applicable regulations, statutes, legislative history, and case law to indicate that "proceeding" means "action." However, these indications do not overcome the expansive language of the Environmental Costs Clause. DOE's interpretation overlooks the explicitly broad scope of the Environmental Costs Clause and the explicitly narrow limitation of clause (e)(32) to "fraud . . . or similar proceeding[s]" where the contractor is "found liable." We therefore affirm the Board's interpretation of "proceeding."

B. *Stone* Defense Costs and the Supreme Court

DOE contends that the Board "erred in applying its 'restrictive' definition of 'proceeding' to Rockwell's claim for *Stone* defense costs incurred from the time the suit was filed to the date the Government moved for leave to intervene, and determining such costs 'could be considered to have been expended in a different and separate suit or proceeding.'" Opening Br. of the Secretary of Energy at 51. DOE argues, notwithstanding the findings of the Supreme Court, "[t]here was only one *Stone* suit." *Id.*

Rockwell contends that it does not matter how many suits there were in *Stone*, only that "as the Board correctly concluded, allowability turns on whether the Government Claim involves costs of defending a 'fraud . . . or similar proceeding' where Rockwell was 'found liable.'" Br. of Rockwell at 51. Rockwell also contends that the Board was correct in determining that the issues before it were identical and actually litigated in the Supreme Court action, and thus collateral estoppel applied.

Given our interpretation of the applicable contract provisions above, Rockwell is correct that allowability of costs turns on whether the claim involves costs of defending a "fraud . . . or similar proceeding" where Rockwell was "found liable." We find that because the Supreme Court determined that Mr. Stone was not an original source and therefore the district court was unable to properly exercise jurisdiction over his part of the litigation, it follows that Rockwell could not be liable for that part of the litigation. As pointed out by the Board, "the claims where Rockwell was found liable were not even asserted until the amended complaint was filed." DOE's argument that the "gravamen of the initial and amended complaints was the same, *i.e.*, Rockwell concealed from the Government environmental problems involving unstable pondcrete in order to get claims paid or approved," may be true, Response and Reply Br. of the Secretary of Energy at 33; however, the contracts require Rockwell be found liable before the costs are disallowed–Rockwell cannot be held liable for costs incurred defending against claims brought by a plaintiff who has no standing. Accordingly, costs incurred prior to the Government's intervention are allowable reimbursements.

C. Common Defense Costs

With regards to the claims or issues Rockwell both won and lost after the Government's intervention, *i.e.*, the "common costs," Rockwell argues that "[w]hile the Board correctly concluded that clause (e)(32) does not bar all *Stone* defense costs, it erred in limiting Rockwell's recovery." Br. of Rockwell at 53. Rockwell argues that "the Board had discretion to award Rockwell all its costs . . . . But the Board found that it lacked the power to do so, or even apportion costs, despite Rockwell's limited liability in *Stone*." *Id.* at 66.

We agree with Rockwell that the Board has the authority to apportion costs based on Rockwell's liability in *Stone*. In *Abraham*, we noted that

> Normally the costs of a database used for more than one purpose should have been apportioned in some manner to reflect both the allowable and unallowable uses. Here, however, the government did not argue for the apportionment of those costs, but rather followed an all or nothing approach, arguing only that these costs be found unallowable in their entirety for the same reasons that it urged that the corporate defense costs were unallowable. Having found that the corporate defense costs are allowable, the database costs are similarly allowable because the government has waived its right to argue for apportionment.

*Abraham*, 326 F.3d at 1255. This language clearly contemplates the ability of the Board, under these contract terms, to apportion costs in certain cases. Additionally, this ability is consistent with our limited construction of the term "proceeding" above. To disallow such costs in every situation where liability for fraud or similar pro-

ceeding is found is too broad of a contention, encouraging potential piecemeal litigation, judicial inefficiency, and unfair results.

However, we find that the *Stone* litigation involved a "common core of facts" and was "based on related legal theories." *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). As stated by other circuits, there are circumstances "[w]here several claims arise out of a common factual core or are based on related legal theories, separating out the legal services rendered with respect to these overlapping claims would be an exercise in futility." *Munson v. Milwaukee Bd. of School Directors*, 969 F.2d 266, 272 (7th Cir. 1992); *see also Garrity v. Sununu*, 752 F.2d 727, 735 (1st Cir. 1984). Here, the Board expressly recognized that the claims at issue were interrelated and based on the same core facts: "Counts 1 through 5 all involved issues relating to pondcrete and saltcrete . . . . Those core facts all supported to some degree alleged claims for FCA violations, common law fraud, breach of contract, payment by mistake, and unjust enrichment." A34. In this case, we find that because there is a common core of facts all relating to the fraud for which Rockwell was found liable, apportionment is inappropriate in this case. *See* A491-94, Department of Justice's Amended Complaint.

## CONCLUSION

Because the Board correctly determined that costs relating to claims sounding in fraud where the Government was successful are unallowable and that costs relating to claims where Rockwell was successful are allowable under clause (e)(32), we AFFIRM IN PART. Because we find that the Board had the authority to apportion costs, we REVERSE IN PART. However, apportionment is inap-

propriate in this case; therefore, it is unnecessary to remand.

## AFFIRMED-IN-PART, REVERSED-IN-PART

### COSTS

No costs.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————————

**Steven Chu, SECRETARY OF ENERGY,**
*Appellant,*

**v.**

**THE BOEING COMPANY,
(SUCCESSOR-IN-INTEREST OF ROCKWELL
INTERNATIONAL CORPORATION),**
*Appellee.*

------------------------------------------------

**THE BOEING COMPANY**,
(Successor-in-Interest of Rockwell International Corporation),
*Appellant,*

**v.**

**Steven Chu, SECRETARY OF ENERGY,**
*Appellee.*

———————————————

2011-1304, -1317

———————————————

Appeal from the Civilian Board of Contract Appeals in Nos. 337, 338, 339, and 978, Administrative Judge R. Anthony McCann.

———————————————

BRYSON, *Circuit Judge*, concurring in part and dissenting in part.

I agree with the court that the costs relating to fraud claims on which the government was successful are unallowable.  And I agree that the so-called "common costs" are not subject to apportionment.  To that extent I concur in the court's judgment.  However, I do not agree with the Board or the court that Boeing is entitled to recover the costs that were incurred in the fraud action but that related to claims on which the government did not prevail.  On that issue I respectfully dissent.

This case turns principally on the meaning of the provision referred to clause (e)(32) in the 1986 and 1989 contracts between the Department of Energy and Rockwell International Corporation, the predecessor of the Boeing Company.  The government argues that the clause bars the contractor from recovering costs associated with any proceeding in which the contractor or its agents or employees are found guilty of or liable for charges of fraud or the like.  Boeing argues that the clause is narrower and bars recovery only of those costs associated with the particular charges on which a finding of guilt or liability was entered.

A

Clause (e)(32) uses confusing language.  It makes unallowable

> [c]osts incurred in defense of any civil or criminal
> fraud proceeding or similar proceeding (including
> filing of any false certification) brought by the
> Government where the Contractor, its agents or
> employees, is found liable or has pleaded nolo con-

tendere to a charge of fraud or similar proceeding (including filing of a false certification).

The problem is with the word "proceeding." The ordinary meaning of that term is a suit, action, or matter that may comprise multiple counts or charges; it is not limited to a single count or charge in such an action. *See Rumsfeld v. Gen. Dynamics Corp.*, 365 F.3d 1380, 1386 (Fed. Cir. 2004), quoting *Black's Law Dictionary*. Under that ordinary meaning, however, the last portion of the clause is clumsy, to say the least. If a "proceeding" means at least the entire action, which may comprise multiple counts or charges, the phrase "a charge of fraud or similar proceeding" is difficult to parse. In addition, the phrase "including filing of a false certification" does not fit comfortably in conjunction with the term "proceeding," because filing a false certification is not a kind of "proceeding" in the normal sense of that word. On the other hand, defining the term "proceeding" to mean a count or charge not only is contrary to the ordinary meaning of the term, but also fails to accord the word a meaning different from that of the term "charge," with which it is juxtaposed, leading to a clumsy redundancy. In short, the language of the clause is ambiguous; it presents the kind of interpretation problem as to which we must look to extraneous sources for guidance. Fortunately, such guidance is available.

The language found in clause (e)(32) is drawn directly from a 1985 Act of Congress. Because the contract language was taken almost verbatim from the statute, we can look to evidence of the meaning of the statute in seeking to determine the meaning of the corresponding contract clause. *See Gen. Dynamics Corp.*, 365 F.3d at 1385-90; *Roedler v. Dep't of Energy*, 255 F.3d 1347, 1352 (Fed. Cir. 2001); *Santa Fe Eng'rs, Inc. v. United States*, 801 F.2d 379, 381-82 (Fed. Cir. 1986). When we examine

the legislative history, background, and regulatory interpretation of the 1985 statute, we find that they provide substantial support for the government's construction of the contract language.

1. In 1982, the Defense Acquisition Regulation ("DAR"), the predecessor to the Federal Acquisition Regulation ("FAR"), was amended to include a "Defense of Fraud Proceedings" provision, which rendered costs incurred in connection with fraud proceedings unallowable. The provision stated:

> Costs incurred in connection with defense of any (i) criminal or civil investigation, grand jury proceeding or prosecution, (ii) civil litigation, or (iii) suspension, debarment or other administrative proceedings, or any combination of the foregoing, brought by the Government against a contractor, its agent or employee, are unallowable when the charges, which are the subject of the investigation, proceedings, or prosecution, involve fraud on the part of the contractor, its agent or employee, as defined in (b) below, and result in conviction (including conviction entered on a plea of nolo contendere), judgment against the contractor, its agent or employees, or decision to debar or suspend, or are resolved by consent or compromise.

32 C.F.R. § 15-205.52(a) (1983). The regulation defined the term "costs" to include all expenses "incurred prior to the commencement of the formal judicial or administrative proceedings which bear a direct relationship to the proceedings." *Id.* § 15-205.52(c). The notice accompanying that provision explained that it was intended to disallow reimbursement of costs "incurred by a contractor in the defense of criminal or civil fraud proceedings . . .

when the action, brought by the Government, results in a conviction or judgment against the contractor . . . ." 48 Fed. Reg. 3457 (Jan. 25, 1983). The following year, the language from the DAR was adopted as part of the FAR. 48 C.F.R. § 31.205-47 (1983).

From the plain language of the 1983 FAR provision, which disallowed all costs incurred in connection with the defense of any criminal, civil, or administrative proceeding brought against the contractor if the charges that were the subject of the proceeding involved fraud and resulted in a conviction of the contractor or its agents or employees, it is clear that the provision barred recovery of all costs incurred in the entire criminal or civil proceeding or action, not just those costs that were associated with or could be attributed to a particular charge or count on which a fraud-based judgment was entered. This court stated as much in *Brownlee v. Dyncorp*, 349 F.3d 1343, 1349 (Fed. Cir. 2003), where the court wrote, "At least since 1983, the FAR has barred the recovery of legal fees as a cost under government contracts if those fees were incurred in defense of a fraud proceeding that resulted in a conviction."[1]

2. In 1985, Congress adopted legislation that had the effect of modifying the FAR's "Defense of Fraud Proceedings" provision. As originally introduced, the Defense of Fraud Proceedings clause in the 1985 Act disallowed costs incurred in "[d]efense of any fraud proceeding brought by the United States, unless the contractor is found not to be liable in any way for the alleged fraud." H.R. 2397, 99th

---

[1] The FAR applies to DOE contracts, as supplemented by the Department of Energy Acquisition Regulation ("DEAR").

Cong., 1st Sess. (1985). In committee, that language was modified as a matter of form to read "[c]osts incurred in defense of any fraud proceeding brought by the United States where the contractor is found liable for fraud or has pleaded nolo contendere to a charge of fraud." *Full Committee Consideration of H.R. 2419 et al.: Hearings before the H. Comm. on Armed Services*, 99th Cong., 73-74 (1985); 131 Cong. Rec. 17,104-05 (1985). Both the original and amended forms of that proposed legislation were unambiguous regarding the meaning of the term "proceeding"; it was clear in both versions that the provision would disallow all costs for any investigation or litigation that led to a finding of liability for fraud or a plea of nolo contendere to a charge of fraud.

During the House debate on the 1985 Act, an amendment was offered to the Defense of Fraud Proceedings provisions. The sponsor of the amendment described it as intended to "strengthen [the provisions] considerably" and to "strictly proscribe those instances in which defense contractors are able to charge the American public for their legal fees." 131 Cong. Rec. 17108-09 (1985). That amendment contained what ultimately became the final text of the provisions. It made unallowable

> [c]osts incurred in defense of any civil or criminal fraud proceeding or similar proceeding (including filing of any false certification) brought by the United States where the contractor is found liable for fraud or has pleaded nolo contendere to a charge of fraud or similar proceeding (including filing of false certification).

That language, with only minor changes, was enacted. The provision that applied to the Department of Defense was codified at 10 U.S.C. § 2324(e)(1)(C) (Supp. V 1987),

and the identical provision that applied to the Department of Energy was codified at 42 U.S.C. § 7256a (Supp. V 1987).

It was the floor amendment that added the confusing language that ultimately made its way into the contracts at issue in this case. It is clear from the context in which that language was added to the 1985 Act, however, that the amendment was not intended to modify the original language of the Defense of Fraud Proceedings provisions in a way that would increase the scope of allowable contractor costs in fraud cases. Instead, the purpose of the amendment was the opposite: It was designed to extend the prohibition against recovery, which had been limited to cases of fraud, to include cases involving conduct similar to fraud, including filing a false certification. The legislative history supports that interpretation of the statute, and later events would provide further evidence for that view.

3. The 1985 Act authorized the Secretary of Defense and the Secretary of Energy to promulgate regulations implementing the Defense of Fraud Proceedings provisions of that Act. 99 Stat. 683, 775, codified at 10 U.S.C. § 2324(e)(2)(A) (Supp. V 1987) and 42 U.S.C. § 7256a(b) (Supp. V 1987) (now found at 50 U.S.C. § 2781(a)(3)). In accordance with that authorization, the pertinent FAR provision was modified in 1986 in response to the new statute. Only one change of substance was made in the regulation, and that change tracked the purpose of the floor amendment to the 1985 Act by extending the prohibition on the allowance of costs incurred in proceedings involving fraud to cover proceedings involving offenses similar to fraud, including filing a false certification. Thus, the pre-1985 version of the regulation referred to proceedings "when the charges, which are the subject of

the investigation, proceedings, or prosecution *involve fraud on the part of the contractor.*" 32 C.F.R. § 15-205.52(a) (1983) (emphasis added). The post-1985 version referred to proceedings "when the charges, which are the subject of the investigation, proceedings, or prosecution *involve fraud or similar offenses (including filing of a false certification) on the part of the contractor.*" 48 C.F.R. § 31.205–47 (1986) (emphasis added). From that text, it is clear that the revised regulation continued to use the term "proceedings" broadly, to refer to the entire case in which fraud charges were brought, not simply the fraud charges themselves.

In *Brownlee v. Dyncorp*, 349 F.3d 1343 (Fed. Cir. 2003), this court agreed with that characterization of the 1986 FAR provision and held that the term "proceeding" in that provision should be read broadly to render unallowable all costs of the litigation, not just those attributable to the count on which a conviction was entered. The court stated: "Furthermore, contrary to the contractor's contention, the regulation does not simply disallow the costs of defending the employee (which the contractor excluded from its claim); it disallows all costs of the proceeding, including the costs of defending the contractor, even though the contractor itself was not convicted." *Id.* at 1352.

The language of the 1986 amendment to the FAR is highly significant. It is the regulatory interpretation of the statutory language in the 1985 Act. It demonstrates that the regulatory body responsible for administering the statute interpreted the statutory language not to have broadened the allowability of costs in fraud proceedings, but to have simply extended the prohibition on allowability from cases involving fraud to cases involving fraud and offenses similar to fraud, including filing a false certifica-

tion. The Department of Energy proposed an identical regulation, which was subsequently incorporated in the DEAR. *See* 48 C.F.R. § 970.3102-20 (1987).

This court has recognized that FAR provisions interpreting congressional enactments are entitled to deference under the principles of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Dyncorp*, 349 F.3d at 1354 ("The FAR regulations are the very type of regulations that the Supreme Court in *Chevron* and later cases has held should be afforded deference."). If a statute is ambiguous, as is plainly true of the 1985 Act, *Chevron* dictates that the interpretation of the statute by the agency charged with its administration must be respected unless that interpretation is unreasonable. The regulatory interpretation of the statute, as reflected in the 1986 provision of the FAR and the identical provision of the DEAR, are consistent with the pre-1985 regulation and the legislative history of the 1985 Act and cannot fairly be deemed unreasonable. Thus, deference is owed to the agencies' interpretation of the ambiguous language of the 1985 Act. Applying that interpretation to the corresponding contract language requires that clause (e)(32) be construed to disallow the costs of the entire proceeding that leads to fraud convictions or findings of liability, not just the costs that are allocable to the particular counts on which the contractor was found guilty or liable.

4. In 1988, Congress made two more pertinent changes to the statutes governing the allowability of costs relating to proceedings involving fraud and other criminal conduct. First, in the National Defense Authorization Act, Fiscal Year 1989, Pub. L. 100-456, 102 Stat. 1918 (1988) ("NDAA"), Congress added a provision to section 2324(e) of Title 10 that disallowed "costs incurred in

connection with any civil, criminal, or administrative action" resulting "in a determination that a contractor has violated or failed to comply with any Federal law or regulation" if the action resulted in a conviction (in the case of a criminal action) or a monetary penalty and a determination that the violation was knowing or willful (in the case of a civil or administrative action), or a decision to debar or suspend the contractor or to terminate the contract if the decision was based on a determination that the violation was knowing or willful. 102 Stat. 2023-24.

Second, Congress enacted the Major Fraud Act, Pub. L. 100-700, 102 Stat. 4631 (1988), a part of which embodied the same prohibition that had been adopted earlier that year in Public Law 100-456. The new statutory language, which was codified at 10 U.S.C. § 2324(k), largely tracked the NDAA, except that it used the term "proceeding" in place of the term "action" throughout. Thus, as amended, the statute rendered unallowable those "costs incurred by a contractor in connection with any criminal, civil, or administrative proceeding" if the proceeding related to a violation of federal law and resulted, "[i]n the case of a criminal proceeding[,]" in "a conviction (including a conviction pursuant to a plea of nolo contendere)." Congress's intent to use the term "proceeding" broadly was clear, not only from the language of the operative provisions, but from the definitional section of the statute, which stated that the term "proceeding" "includes an investigation." 10 U.S.C. § 2324(k)(6)(A). This court so ruled in *Rumsfeld v. General Dynamics Corp.*, 365 F.3d 1380, 1386 (Fed. Cir. 2004). The court in that case held that the term "proceeding" in section 2324(k) "includes all claims or causes of action within a particular case," not just a single count or claim on which a finding of fraud has been made. Rejecting an

argument similar to the argument made by Boeing in this case, the court stated simply: "Congress could have drafted section 2324(k) such that legal costs of a proceeding are unallowable on a claim-by-claim basis; it did not." *Id.*

There is no indication that, when Congress accorded the term "proceeding" a broad meaning in the Major Fraud Act, it intended for the term to have a different meaning from the one it had in the 1985 Act at issue here. In fact, Congress placed the two provisions together in the same section of title 10 of the U.S. Code. Thus, the term "proceeding" was (and still is) found in both subsections (e) and (k) of section 2324, with subsection (e) carrying forward the language of the 1985 Act and subsection (k) embodying the language of the 1988 Act. It is well established that identical words used in different parts of the same statute are presumed to have the same meaning. *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997, 2004-05 (2012); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003); *Richard v. United States*, 677 F.3d 1141, 1147 (Fed. Cir. 2012). Boeing's interpretation of the term "proceeding" in the contracts, which is taken from the identically worded language of 10 U.S.C. § 2324(e), would require the court to construe the term "proceeding" narrowly in section 2324(e) and broadly in subsection 2324(k), contrary to that presumption.

Where all this leads is the following: The language of the 1985 Act (and therefore the contract language that was taken from that Act) is ambiguous. Other evidence as to the meaning of the Act, however, all points in the direction urged by the government: that the term "proceeding" refers to the entire matter or case at issue, not simply to those claims or counts on which liability is based. The FAR provisions that predated the 1985 Act

used the term "proceeding" broadly. The legislative history of the 1985 Act indicates that the amendment that added the problematic language was intended to broaden the scope of the unallowability provision, not to narrow it. The post-1985 regulations implementing the 1985 Act employed a broad meaning of the term "proceeding" as part of the agency's official interpretation of the statutory language; under *Chevron*, that interpretation is binding unless it is unreasonable, which it clearly is not. And in the 1988 Major Fraud Act, Congress gave the term "proceeding" a broad definition, one that presumptively applies to the same term that is used in the portion of the same statutory section that is at issue in this case. In light of all these considerations, I am satisfied that the term "proceeding," as used in the 1985 Act and the contracts at issue in this case, should be given the broad definition urged by the government, not the narrow definition urged by Boeing.

## B

The court bases its interpretation of clause (e)(32) in part on its conclusion that a broad interpretation of that clause would conflict with the Environmental Costs Clause of the contracts, clause 54(d)(16). But the Board provided a complete and convincing answer to that argument. Clause 54(c) of the contracts specifically provides that allowable costs "shall not include the cost of any item described as unallowable in paragraph (e) [including clause (e)(32)]." Therefore, as the Board explained, clause (e)(32), where it applies, "is a specific exception to the allowability of 'all costs' covered by clause 54(d)(16)."

Importantly, clause (e)(32) bars the allowance of costs only where the proceeding involves a charge or fraud and results in liability or conviction on a charge of fraud. The

realm of potential conflict between clause (e)(32) and the Environmental Costs Clause is therefore quite limited; outside the context of fraud-based proceedings, clause (e)(32) does not in any way conflict with the scope of the Environmental Costs Clause. For that reason, the analysis in this court's decision in *Abraham v. Rockwell Int'l Corp.*, 326 F.3d 1242 (Fed. Cir. 2003), is not applicable here. In that case, the court rejected the government's argument for the unallowability of certain costs, as the government's argument would have effectively limited the Environmental Costs Clause to make it "entirely inapplicable to all proceedings brought under the federal environmental laws, an area that the clause was explicitly drafted to cover." *Id.* at 1253. In this case, clause (e)(32) would have no such sweeping effect. Instead, it would have the far more limited effect of making the Environmental Costs Clause inapplicable to actions based on contractor fraud and resulting in the contractor's liability for fraud. That narrower role for clause (e)(32) is significant; as the court in *Abraham* pointed out, the government's argument for restricting the scope of the Environmental Costs Clause "would make sense if the result were to partially limit the coverage of the Environmental Costs Clause." *Id.*

Beyond that, the "conflict" rationale proves too much, as the same conflict argument would apply to costs incurred on individual fraud counts on which a contractor is found liable. After all, if the Environmental Costs Clause covers all costs of litigating fraud claims relating to the environment on which the contractor prevails, the clause should extend equally to claims on which the contractor is found liable. Thus, there is potential conflict between the two clauses even under the narrow interpretation of the term "proceeding" that the court endorses. For that reason, the "conflict" argument does not provide useful

guidance as to how the term "proceeding" in clause (e)(32) should be interpreted. Because the statutory and regulatory history bears directly on that question and supports the government's interpretation of clause (e)(32), I would accord the term "proceeding" that broader interpretation and remand this case to the Board for reconsideration of the allowability issue in light of that interpretation. I therefore respectfully dissent.[2]

---

[2] The Board allowed Rockwell to recover all of its costs that pre-dated the government's intervention in the *Stone* litigation on the ground that Rockwell was not found liable on any of the claims that were asserted prior to the filing of the amended complaint. Based on my interpretation of clause (e)(32), I would not uphold the Board's ruling on that ground but would direct the Board on remand to determine whether the portion of the *Stone* litigation that pre-dated the government's intervention should be treated as a separate proceeding for purposes of clause (e)(32) or as part of a single ongoing proceeding.