Donald H. **RUMSFELD, Secretary of Defense, Appellant,**

v.

**GENERAL DYNAMICS CORPORATION,**
**Appellee.**

No. 03–1209.

United States Court of Appeals,
Federal Circuit.

April 29, 2004.

Domenique Kirchner, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellant. With her on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director. Of counsel on the brief were Thomas B. Pender, Attorney, Defense Contract Management Agency, of Manassas, VA; and Charles W. Goeke, Attorney, Defense Contract Management Agency, of Philadelphia, PA.

Susan C. Levy, Jenner & Block, LLC, of Chicago, IL, argued for appellee. With her on the brief were Donald B. Verrilli, Jr. and David A. Churchill, Jenner & Block, LLC, of Washington, DC.

Before MICHEL, SCHALL, and PROST, Circuit Judges.

MICHEL, Circuit Judge.

The government appeals from the final decision of the Armed Services Board of Contract Appeals ("Board") insofar as it held that 10 U.S.C. § 2324(k) required the apportionment of legal costs for defending against different claims with different outcomes within a single proceeding. The Board concluded that such apportionment was necessary to properly accomplish Congress' implicit goals of permitting recovery of such costs when a contractor was successful, while insuring that a contractor was not reimbursed for such costs regarding proven or conceded wrongdoing. *Gen. Dynamics Corp.*, ASBCA No. 49,372, 2002–2 BCA (CCH) ¶ 31,888 (June 10, 2002). Because we conclude that the Board erred in holding that section 2324(k) requires such apportionment and allowability of costs for different claims in a single proceeding, and because the government has not appealed from that part of the Board's decision reversing the contracting officer's assessment of a penalty pursuant to regulation, we reverse-in-part.

## Background

In the late 1970s, General Dynamics Corporation ("General Dynamics") built two civilian vessels using a construction differential subsidy granted by the Maritime Administration pursuant to Title V of the Merchant Marine Act of 1936, 46 U.S.C.App. §§ 1151–1161. To demonstrate eligibility for the subsidies, General Dynamics was required to submit cost details and evidence that both the negotiated price and General Dynamics' cost estimates were "fair and reasonable." 46 U.S.C.App. § 1152(a). The detailed estimates that General Dynamics submitted to the Maritime Administration in connection with the subsidies were divided into six areas, one of which concerned sphere insulation and joiner work.

The subcontract for the sphere insulation and joiner work was awarded to the Frigitemp Corporation of New York City ("Frigitemp"). Mr. Davis, Senior Vice President of Frigitemp, and Mr. Veliotis, President and General Manager of General Dynamics' Quincy Shipbuilding Division, among others, agreed to award the subcontract to Frigitemp in exchange for bribes and kickbacks to be paid to Veliotis and Mr. Gilliland, Veliotis' principal assistant. *United States v. Davis*, 767 F.2d 1025, 1027 (2d Cir.1985). During 1973–1977, Frigitemp, at the behest of Mr. Davis, paid about $2.7 million in kickbacks to General Dynamics officers Veliotis and Gilliland, in return for being awarded the subcontracts. *Id.; United States v. Davis*, 803 F.Supp. 830, 859–60 (S.D.N.Y.1992).

In the early 1980s, Gerald Lee, Chief Executive Officer of Frigitemp, Davis, Veliotis, and Gilliland were indicted. *Davis*, 767 F.2d at 1027. Lee pled guilty, Davis was found guilty, and Veliotis and Gilliland fled the United States. *Id.*

In 1985, the United States Attorney commenced a civil proceeding in the United States District Court for the Southern District of New York. On October 27, 1992, the district court dismissed the government's claims and found in favor of General Dynamics. *Davis*, 803 F.Supp. 830. General Dynamics claimed, and the district court ruled, that General Dynamics was not legally liable for the damages suffered by the Maritime Administration as a result of the Frigitemp kickbacks because the pre–1986 version of the Anti–Kickback Act did not apply to prime contractors.[1] *Id.* at 859, 871. Though the district court found that General Dynamics' estimates for the five categories of costs other than the sphere insulation and joiner estimate were fair and reasonable, and that the government had not established fraud, the district court did not rule on the government's allegation that General Dynamics had passed the costs of the Frigitemp kickbacks on to the Maritime Administration by including them in the sphere insulation and joiner estimate.

On March 17, 1994, the Second Circuit affirmed-in-part, reversed-in-part, and remanded the case to the district court. *United States v. Gen. Dynamics Corp.*, 19 F.3d 770 (2d Cir.1994). The Second Circuit reversed the district court's ruling that General Dynamics was not legally liable for the government's damages suffered as a result of the inflated estimates for the sphere insulation and joiner work due to the Frigitemp kickbacks, and remanded to the district court. *Id.* The Second Circuit found that the Anti–Kickback Act did not

---

**1.** The district court, however, found for the record that the government's damages for the sphere insulation and joiner cost estimate would be the difference between General Dynamics' projected revenue for the Frigitemp subcontracts, and General Dynamics' costs at delivery estimates of the Frigitemp contracts, which amounted to over $2.6 million for each ship. *Davis*, 803 F.Supp. at 859–60.

preempt the False Claims Act, that the United States had stated valid claims under the False Claims Act and federal common law that should have been adjudicated, and that the government's remedies would extend past the mere amount of the kickbacks to the amount that the cost estimates were inflated due to the collusive arrangement between Frigitemp and General Dynamics. *Id.* The Second Circuit affirmed the district court's findings for General Dynamics on the other five portions of the costs estimate. *Id.* at 772. Because the government did not petition the Second Circuit for rehearing or the Supreme Court for writ of certiorari, the estimates claims were finally resolved in General Dynamics' favor on June 15, 1994.

On remand, the government and General Dynamics entered into an agreement that provided for settlement of "all claims against General Dynamics included in the suit," in consideration for the payment of $3.3 million by General Dynamics. The parties agreed that the "action shall be dismissed as against General Dynamics with prejudice and without costs or attorney's fees to either party." On July 21, 1994, the district court approved the parties' settlement of the proceeding.

Shortly after the district court's October 1992 decision in General Dynamics' favor, General Dynamics notified a Department of Defense contracting officer that General Dynamics had revised its 1987 through 1991 corporate overhead proposals to include *Davis*-case costs that had previously been set aside in accordance with FAR 31.205–47(g). Following the 1994 settlement, General Dynamics submitted its certified revised overhead proposal for 1991, and included its *Davis*-case costs as overhead costs for which it sought payment by the Department of Defense. By letter dated August 26, 1994, the contracting officer wrote General Dynamics, stating that all the *Davis*-case legal expenses were un-allowable pursuant to FAR 31.205–47(b)(4), and requested that General Dynamics "remove the expenses from certified claims for incurred costs and billings." On September 9, 1994, General Dynamics submitted a revised certified 1991 overhead cost proposal which incorporated 80 percent of the *Davis*-case costs, including the proceeding costs associated with the Frigitemp cost estimate. By letter dated September 22, 1994, General Dynamics stated that, because it had substantially prevailed in the *Davis* proceeding, it was entitled to include 80 percent of all of its costs of the proceeding in its overhead proposals pursuant to regulation. By letter dated December 12, 1994, the contracting officer sent General Dynamics a Defense Contract Audit Agency ("DCAA") report on General Dynamics' 1991 revised corporate overhead proposal and stated that the DCAA report questioned, among other things, the $156,815 or 5 percent of the total proceeding costs that General Dynamics attributed to the Frigitemp claim. The contracting officer made clear that the DCAA's view "does not represent" the view of the contracting officer.

In March 1995, General Dynamics wrote to the contracting officer and indicated its belief that the "legal fees and costs associated with the Frigitemp claims are unal-lowable," but that the legal fees associated with the other claims in the *Davis* proceeding were allowable to the extent provided in FAR 31.205–47. General Dynamics included a new estimate placing the total 1991 *Davis* case costs at approximately $3.8 million, with the Frigitemp costs constituting approximately $323,000 of that amount. On August 25, 1995, General Dynamics requested issuance of a final contracting officer's decision on its indirect cost rates. On September 20, 1995, the contracting officer issued a final decision on General Dynamics' 1991 overhead proposal and found that all of the costs of

the *Davis* case were unallowable pursuant to FAR 31.205–47(b)(4)–(5). The contracting officer assessed a penalty in the amount of $1,731,900 under DFARS 252.231–7001 ("Penalties for Unallowable Costs") for including "expressly unallowable costs" in the revised 1991 proposal.

On October 17, 1995, General Dynamics withdrew its 1991 overhead proposal and stated that it would resubmit 1991 overhead costs without including the *Davis* proceeding costs. General Dynamics also appealed to the Board.

On June 10, 2002, the Board found that the contracting officer erred in refusing to allow any of the *Davis* proceeding costs in General Dynamics' 1991 overhead cost proposal, and reversed the penalty issued by the contracting officer. It was undisputed that General Dynamics could not recover for the costs associated with its defense of the Frigitemp claims. The primary issue before the Board was "whether [General Dynamics'] legal proceeding costs may be apportioned for the purposes of cost allowability when some of the claims succeed and others fail." *Gen. Dynamics*, 2002–2 BCA (CCH) ¶ 31,888.

In deciding this issue, the Board found that neither the Major Fraud Act nor its legislative history directly addressed apportionment of proceeding costs. Nevertheless, the Board concluded that:

> Congress intended to permit recovery of legal defense costs when a contractor was successful, while insuring that a contractor not be rewarded for wrongdoing. To properly reflect these dual goals, we believe apportionment is required for those claims in a proceeding on which the contractor has prevailed and which do not involve the same wrongdoing as the claims that are compromised, unless the settlement agreement provides otherwise. Consequently we hold the Major Fraud Act of 1988, as implemented by FAR 31.205–47(b)(4),

requires apportionment of contractor legal defense costs between unsuccessful and successful claims of the Government when the successful claims do not stem from the same wrongdoing as the unsuccessful claims, and there is a reasonable basis for apportionment of the costs. *Id.* In the Board's view, section 2324(k)(3), promulgated as part of the Major Fraud Act of 1988, implied that some costs might be allowable at settlement, even if not previously allowable, and that costs could be apportioned by agreement of the parties in a settled proceeding. The Board held that apportionment of costs was required to accomplish Congress' goals of permitting recovery of legal costs when a contractor was successful, while insuring that a contractor was not rewarded for wrongdoing. *Id.* The Board remanded for a determination of the quantum of costs in this case. *Id.*

The government timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).

This opinion follows the court's review of the record and consideration of the parties' oral argument, heard on January 8, 2004.

## Discussion

### I.

The core issue on appeal is whether the settlement of the Frigitemp claim in the *Davis* proceeding makes unallowable General Dynamics' costs in defending against all claims in that proceeding where the settlement agreement does not provide for the allowability of costs, but expressly disallows them. The government argues that all costs associated with all claims in the *Davis* case are unallowable by operation of section 2324(k) because a "disposition of [a] proceeding ... by consent or compromise" occurs when any claim in that proceeding is settled at any point in the life of

the proceeding. General Dynamics, on the other hand, argues that the costs for the Frigitemp claim and all other claims should be apportioned because the latter set of claims are factually distinct and resulted in an outcome favorable to it.

■ After reviewing the text of section 2324(k) and the legislative history surrounding its enactment, we hold that, at least in the circumstance where there has been a disposition of the proceeding by consent or compromise, such that, following the settlement, no pending claims remain in that proceeding, and the proceeding could have resulted in a determination of contractor liability for fraud or misconduct, no costs for any part of the proceeding are allowable, except as provided in the settlement agreement.[2]

## A. The Text of Section 2324(k)

Section 2324(k) of Title 10 provides, in relevant part:

(k) Proceeding costs not allowable—(1) Except as otherwise provided in this subsection, costs incurred by a contractor in connection with any criminal, civil, or administrative proceeding commenced by the United States or a State are *not allowable as reimbursable costs* under a covered contract *if the proceeding (A) relates to a violation of, or failure to comply with, a Federal or State statute or regulation,* and (B) *results in a disposition described in paragraph (2).*

(2) A disposition referred to in paragraph (1)(B) is any of the following:

(A) In the case of a criminal proceeding, a conviction (including a conviction pursuant to a plea of nolo contendere) by reason of the violation or failure referred to in paragraph (1).

(B) In the case of a civil or administrative proceeding involving an allegation of fraud or similar misconduct, a determination of contractor liability on the basis of the violation or failure referred to in paragraph (1).

(C) In the case of any civil or administrative proceeding, the imposition of a monetary penalty by reason of the violation or failure referred to in paragraph (1).

(D) A final decision—

(i) to debar or suspend the contractor;

(ii) to rescind or void the contract; or

(iii) to terminate the contract for default;

by reason of the violation or failure referred to in paragraph (1).

(E) A *disposition of the proceeding by consent or compromise if such action could have resulted in a disposition described in subparagraph (A), (B), (C), or (D).*

(3) In the case of a proceeding referred to in paragraph (1) that is commenced by the United States and is *resolved by consent or compromise* pursuant to an agreement entered into by a contractor and the United States, the *costs incurred by the contractor in connection with such proceeding that are otherwise not allowable as reimbursable costs under such paragraph may be allowed to the extent specifically provided in such agreement.*

. . .

(6) In this subsection:

(A) The term *"proceeding" includes an investigation.*

---

**2.** To the extent the government urges us to adopt a broad rule that the settlement of any claim in the proceeding at any time constitutes "disposition of [a] proceeding . . . by consent or compromise," we decline to do so in the present case. The holding of this case is limited to its facts, as discussed in further detail below.

. . .

10 U.S.C. § 2324(k) (emphases added).

In the present case, there is no dispute that the *Davis* civil case could have resulted in a finding of contractor liability for a violation of, or failure to comply with, a federal or state statute or regulation. The parties dispute only whether the *Davis* case was a "proceeding" that was "resolved by consent or compromise" between General Dynamics and the United States. We hold that it was.

▇ As an initial matter, we hold that the term "proceeding" in section 2324(k) must be given a broad meaning, such that it includes all claims or causes of action within a particular case, action or proceeding.[3] This broad interpretation of "proceeding" is supported by the text of section 2324(k)(2)(E), which specifies a "disposition of the *proceeding* by consent or compromise if *such action* could have resulted in a disposition described in subparagraph (A), (B), (C), or (D)," *id.* § 2324(k)(2)(E) (emphases added), thus equating a "proceeding" and an "action." Further, section 2324(k)(6) broadly defines "proceeding" to include an investigation, *id.* § 2324(k)(6)(A), and other sections of the Major Fraud Act of 1988 relating to the allowability of contractor costs incurred in fraud proceedings specifically define a "proceeding" as "a civil, criminal, or an administrative investigation, prosecution or proceeding." 18 U.S.C. § 293(c)(2). Such an interpretation of "proceeding" is also confirmed by reference to *Black's Law Dictionary*, which defines a proceeding as the "regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment," and notes that "[a proceeding] is more comprehensive than the word 'ac-

tion,' but it may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action, including the pleadings and judgment." *Black's Law Dictionary* 1221–22 (7th ed.1999).

Congress could have drafted section 2324(k) such that legal costs of a proceeding are unallowable on a claim-by-claim basis; it did not. Instead, Congress chose to employ the broader term "proceeding," disallowing all such costs of the proceeding (except where the settlement provides otherwise), and we must give effect to that choice. Because we find the relevant "proceeding" to be all claims in the entire *Davis* case, not each claim individually, the only remaining question is whether that "proceeding" was resolved by "consent or compromise."

The government urges this court to adopt a rule whereby disposition of a proceeding by consent or compromise occurs when any claim ever part of the proceeding is settled. We need not consider or rule upon such a broad rule in the present case. The question before this court is narrower: where a settlement agreement finally resolves all pending claims in a proceeding, has there been a disposition of that proceeding by consent or compromise under section 2324(k)? It is undisputable that there has been. Indeed, even General Dynamics does not dispute that the case was resolved through consent or compromise. Rather, General Dynamics urges this court to adopt a rule that the costs associated with different claims within a proceeding must be apportioned so that only the costs for settled claims are unallowable. We reject this argument. Nothing in the statute provides for or even suggests that apportionment of costs is

---

**3.** Indeed, even General Dynamics concedes that a "proceeding" is more than a single

claim or cause of action.

required or even permissible.[4] For this court to rule that apportionment is required would be to rewrite the statute to apply to individual claims, not a single "proceeding." This we cannot do.

■ The language of the statute is clear: where there is a disposition of a proceeding by consent or compromise, section 2324(k) applies to make unallowable all costs associated with that proceeding unless specifically provided for in the settlement agreement. We hold that, at least in the circumstance that a settlement agreement resolves or disposes of all claims still pending in that proceeding when settlement occurs, there has been a "disposition" of that proceeding by "consent or compromise." Because the settlement agreement between General Dynamics and the government resolved "all claims" against General Dynamics still included in the suit "without costs or attorney's fees to either party," section 2324(k) precludes the recovery of costs by General Dynamics.

Review of the legislative intent behind the Major Fraud Act further confirms this construction of section 2324(k).

4. General Dynamics argues that courts regularly allocate costs between successful and unsuccessful claims under analogous fee-shifting statutes (e.g., the Voting Rights Act of 1964, Title VII of the Civil Rights Act of 1964, the Attorney's Fees Awards Act of 1976 and the Equal Access to Justice Act), and that, despite the lack of express provisions authorizing apportionment in those statutes, the courts have routinely interpreted them to allow parties to recover costs incurred for successfully litigated claims, even if they do not prevail on all claims in a case. We reject this argument.

The "analogous" fee-shifting statutes cited by General Dynamics are distinguishable in that those statutes all award fees to the "prevailing party." Congress did not provide for fees to the "prevailing party" in this instance, instead limiting costs on a "proceeding" basis.

## B. Legislative Intent

Throughout the mid- and late 1980s, various committees and subcommittees of both the United States Senate and the United States House of Representatives investigated what Congress found to be a staggering amount of procurement fraud by defense contractors. *See, e.g.,* Defense Procurement Fraud Law Enforcement; Hearing Before the Subcomm. on Admin. Practice and Procedure of the Senate Comm. on the Judiciary, 99th Cong. (1985); H.R.Rep. No. 100–47 (1987) ("Violations of the Truth in Negotiations Act Give Defense Contractors Millions in Excess Profits").

Following numerous congressional hearings and reports on procurement fraud, Congressman William J. Hughes introduced H.R. 3500 in 1987. At the Subcommittee on Crime's markup, Congressman Hughes offered an amendment in the nature of a substitute, which was reported as H.R. 3911 and cosponsored by all members of the Subcommittee. H.R. 3911, 100th Cong. (1988). After clarifying amendments by the Subcommittee and the full Committee on the Judiciary, the full Com-

Moreover, the fee-shifting statutes cited by General Dynamics were motivated by different concerns on the part of Congress. Each of the fee-shifting statutes cited by General Dynamics was aimed at facilitating private-party plaintiffs' access to the judicial system, particularly in the civil rights context, by removing financial impediments to filing suit. The present situation is distinguishable. In the procurement fraud context, the question is whether defense contractors may recover legal fees incurred in *defending against* civil or criminal fraud allegations made by the government as corporate *overhead*, recoverable under procurement contracts with the government. Thus, allowability of costs in this context is not "fee-shifting" in the traditional sense, but rather, reimbursement for legal costs.

Accordingly, we do not find the analogy to other fee-shifting statutes to be appropriate or convincing.

mittee favorably reported the bill to the House of Representatives by voice vote. H.R.Rep. No. 100–610 (1988). After short debate on the floor, 134 Cong. Rec. 10,326–39 (1988), the House of Representatives approved the bill on May 10, 1988, by a vote of 419 to 0. 134 Cong. Rec. 10,345 (1988).

H.R. 3911 was then referred by the Senate to the Committee on the Judiciary, which held hearings in July of 1988. The Major Fraud Act, and the Government Fraud Law Enforcement Act of 1987, Hearing on H.R. 3911 and S.1958 Before the Senate Comm. on the Judiciary, 100th Cong. (1988). It was during this time that Senator Grassley proposed a Committee amendment adding Section 3, among others, to the bill. Section 3 added a new Section 293 to Chapter 15 of Title 18, and was "intended to change certain statutory and regulatory provisions to conform the treatment of contractors' legal fees and other proceeding costs to that afforded other private parties in litigation with the federal government." [5] S.Rep. No. 100–503, at 4 (1988). The Committee on the Judiciary favorably recommended the bill, after adopting Senator Grassley's amendment adding Section 3, in September 1988. In its Report accompanying H.R. 3911, the Committee described the intent behind Section 3:

> Under current federal law, government contractors are permitted to bill the government for the cost of expenses incurred in fraud proceedings, as an element of contract cost, unless there is a conviction, civil judgment, or a decision to suspend or debar the contractor. See

10 U.S.C. 2324(e)(1)I; 48 C.F.R. 31.205–47 (1987).[1]

> [1] There have been public reports that in procurement fraud cases, government contractors have recovered several million dollars in legal fees, per case.

> Recovery for such expenses by a criminal defendant is otherwise without precedent in American law. In virtually no other case is a criminal defendant permitted to recover the cost of legal defense from the government. The guilt or innocence of the defendant is irrelveant [sic] to this general prohibition on the recovery of proceeding costs. Thus, criminal defendants who are acquitted have never been entitled to recover incurred expenses.

> In civil cases, private parties that prevail over the government can recover legal expenses only by specific statutory authorization, such as the Equal Access to Justice Act [5 U.S.C. 504(a); 28 U.S.C. 2412(d) ] which generally limits legal fee recovery to $75 per hour.

> . . .

> Thus this section is intended to treat the proceeding costs, including legal expenses, of contractors in the same manner as for other private parties involved in the litigation with the federal government.

> . . .

S.Rep. No. 100–503, at 4–5 (1988) (footnotes omitted).

On the Senate floor, Senator Grassley, on behalf of himself and Senators Levin and Bingaman, proposed amendment 3735

---

**5.** To the extent this language suggests that Congress intended to treat procurement fraud cases like other cases in which fee-shifting statutes provide fees to the "prevailing party," see supra note 3, we disagree. As noted above, Congress chose not to employ the "prevailing party" language in this distinct context. Moreover, the legislative history surrounding section 2324(k) itself, discussed in detail below, indicates that its purpose is complementary with, but not identical to, the purpose of the broader provisions of Section 3.

to the bill, amending the Federal Property and Administrative Services Act of 1949 and section 2324 of title 10 to limit the allowability of costs incurred by contractors in fraud proceedings. 134 Cong. Rec. 31,526–29 (1988) (statement of Sen. Grassley). Amendment 3735 was later codified as what is now subsection (k) of section 2324.

In introducing amendment 3735, Senator Grassley echoed the sentiments expressed in the committee report. Senator Grassley noted the "anomalous result" that "the same Government that prosecutes the fraud case pays the cost of the defense" such that the "taxpayers pay twice—we fund the prosecution by D.O.J. and D.O.D. through the Agency's budgets; then we subsidize the contractor and their high-priced lawyers." *Id.* at 31,527. Senator Grassley listed several instances in which contractors recovered millions of dollars in legal fees from the government. *Id.* at 31,528. Senator Grassley also noted that, in civil cases, private parties that prevail over the government can recover legal expenses only by specific statutory authorization, such as the Equal Access to Justice Act. *Id.* at 31,527. Senator Grassley himself explained the intent behind amendment 3735: the amendment was "designed to end this abusive subsidy and, for the first time, place some reasonable limitation on the costs that can be routinely passed on to the Government, and thus, to the taxpayers" and would hopefully be passed "with an eye toward creating a disincentive to increased legal expenses and on reducing what is now an open-ended, and ever-increasing cost to the Government." *Id.* at 31,528.

More specifically, with regard to resolution of proceedings by consent or compromise, Senator Grassley noted that "in the case of proceedings alleging law violations or failure to comply that are resolved by consent or compromise, costs will be generally disallowed, unless the contractor and the Government agree otherwise" and that the "parties can agree to allow all or part of the proceeding costs pursuant to that consent or compromise agreement." *Id.*

Thus, upon review of the legislative backdrop behind the Major Fraud Act and specific statements of legislative intent, as articulated by the drafter of the amendment, it is clear that Congress intended to significantly curtail a contractor's ability routinely to recover legal costs for fraud proceedings, even in cases where the proceeding was resolved through settlement.

Moreover, we read section 2324(k)(5) to indicate an intent to disallow all costs associated with a single instance of misconduct, even if associated with different proceedings. Section 2324(k)(5) reads in relevant part:

(5)(A) Except as provided in subparagraph (C), costs incurred by a contractor in connection with a criminal, civil, or administrative proceeding commenced by the United States or a State in connection with a covered contract may be allowed as reimbursable costs under the contract if such costs are not disallowable under paragraph (1), but only to the extent provided in subparagraph (B).

(B)(i) The amount of the costs allowable under subparagraph (A) in any case may not exceed the amount equal to 80 percent of the amount of the costs incurred, to the extent that such costs are determined to be otherwise allowable and allocable under the Federal Acquisition Regulation.

(ii) Regulations issued for the purpose of clause (i) shall provide for appropriate consideration of the complexity of procurement litigation, generally accepted principles governing the award of legal fees in civil actions involving the United States as a party, and such other factors as may be appropriate.

(C) In the case of a proceeding referred to in subparagraph (A), *contractor costs otherwise allowable* as reimbursable costs under this paragraph *are not allowable if* (i) such *proceeding involves the same contractor misconduct* alleged as the basis of another criminal, civil, or administrative proceeding, and (ii) the *costs of such other proceeding are not allowable* under paragraph (1).

10 U.S.C. § 2324(k)(5) (emphases added). Thus, under section 2324(k)(5), otherwise allowable proceeding costs become unallowable if the alleged misconduct is the same misconduct alleged in another proceeding, the costs of which are not allowable. The goal of such a provision is clear: to eliminate as allowable costs of a contractor in all proceedings involving the same alleged misconduct, once the contractor is found liable for that misconduct in at least one of those proceedings. This provision is at odds with the legislative intent proffered by General Dynamics and adopted by the Board—that costs be apportioned and allowed depending on a determination of non-liability for particular claims. Indeed, if Congress intended apportionment, it would not have specifically provided for the extension of a determination or concession of liability in one proceeding to another for purposes of disallowing costs. Moreover, to the extent section 2324(k)(5) evinces Congress' preference for looking to the underlying misconduct of the contractor in the costs context, Congress specifically chose to look to underlying misconduct *only* where proceeding costs are being disallowed for a separate but related proceeding. In the case of a single proceeding, Congress chose not to consider underlying misconduct, but rather to disallow costs for the entire proceeding where the disposition of the proceeding was through consent or compromise.

Having reviewed the legislative history, we do not believe that it supports General Dynamics' arguments in favor of redefining the clear statutory language to allow for apportionment. Instead, the legislative history shows that Congress intended generally to preclude the allowability of costs in settled procurement fraud proceedings, which is consistent with our interpretation of the language of the statute. We find that section 2324(k) was promulgated with the intent to preclude as allowable all costs in proceedings resolved by consent or compromise with only one narrow exception: where the settlement agreement specifically provides for the allowability of some or all contractor costs.

## II.

As noted above, the Board reversed the contracting officer's assessment of a penalty pursuant to DFARS 252.231–7001. Because the government has not appealed this portion of the Board's decision, we do not reach it.

## Conclusion

Section 2324(k) of Title 10 does not require or permit the apportionment of contractor costs associated with a proceeding among various claims where the proceeding is resolved through consent or compromise, and no such costs are allowable except as expressly provided by the settlement agreement. Because the Board misinterpreted the text of section 2324(k) and the legislative history surrounding the promulgation of the Major Fraud Act of 1988, we reverse the decision of the Board as to the allowability of costs.

*REVERSED–IN–PART.*