BRYSON, Circuit Judge,
concurring in part and dissenting in part.
I agree with the court that the costs relating to fraud claims on which the government was successful are unallowable. And I agree that the so-called “common costs” are not subject to apportionment. To that extent I concur in the court’s judgment. However, I do not agree with the Board or the court that Boeing is entitled to recover the costs that were incurred in the fraud action but that related to claims on which the government did not prevail. On that issue I respectfully dissent.
This case turns principally on the meaning of the provision referred to clause (e)(32) in the 1986 and 1989 contracts between the Department of Energy and Rockwell International Corporation, the predecessor of the Boeing Company. The government argues that the clause bars the contractor from recovering costs associated with any proceeding in which the contractor or its agents or employees are found guilty of or liable for charges of fraud or the like. Boeing argues that the clause is narrower and bars recovery only *989 of those costs associated with the particular charges on which a finding of guilt or liability was entered.
A
Clause (e)(32) uses confusing language. It makes unallowable
[cjosts incurred in defense of any civil or criminal fraud proceeding or similar proceeding (including filing of any false certification) brought by the Government where the Contractor, its agents or employees, is found liable or has pleaded nolo contendere to a charge of fraud or similar proceeding (including filing of a false certification).
The problem is with the word “proceeding.” The ordinary meaning of that term is a suit, action, or matter that may comprise multiple counts or charges; it is not limited to a single count or charge in such an action. See Rumsfeld v. Gen. Dynamics Corp., 365 F.3d 1380, 1386 (Fed.Cir. 2004), quoting Black’s Law Dictionary. Under that ordinary meaning, however, the last portion of the clause is clumsy, to say the least. If a “proceeding” means at least the entire action, which may comprise multiple counts or charges, the phrase “a charge of fraud or similar proceeding” is difficult to parse. In addition, the phrase “including filing of a false certification” does not fit comfortably in conjunction with the term “proceeding,” because filing a false certification is not a kind of “proceeding” in the normal sense of that word. On the other hand, defining the term “proceeding” to mean a count or charge not only is contrary to the ordinary meaning of the term, but also fails to accord the word a meaning different from that of the term “charge,” with which it is juxtaposed, leading to a clumsy redundancy. In short, the language of the clause is ambiguous; it presents the kind of interpretation problem as to which we must look to extraneous sources for guidance. Fortunately, such guidance is available.
The language found in clause (e)(32) is drawn directly from a 1985 Act of Congress. Because the contract language was taken almost verbatim from the statute, we can look to evidence of the meaning of the statute in seeking to determine the meaning of the corresponding contract clause. See Gen. Dynamics Corp., 365 F.3d at 1385-90; Roedler v. Dep’t of Energy, 255 F.3d 1347, 1352 (Fed.Cir.2001); Santa Fe Eng’rs, Inc. v. United States, 801 F.2d 379, 381-82 (Fed.Cir.1986). When we examine the legislative history, background, and regulatory interpretation of the 1985 statute, we find that they provide substantial support for the government’s construction of the contract language.
1. In 1982, the Defense Acquisition Regulation (“DAR”), the predecessor to the Federal Acquisition Regulation (“FAR”), was amended to include a “Defense of Fraud Proceedings” provision, which rendered costs incurred in connection with fraud proceedings unallowable. The provision stated:
Costs incurred in connection with defense of any (i) criminal or civil investigation, grand jury proceeding or prosecution, (ii) civil litigation, or (iii) suspension, debarment or other administrative proceedings, or any combination of the foregoing, brought by the Government against a contractor, its agent or employee, are unallowable when the charges, which are the subject of the investigation, proceedings, or prosecution, involve fraud on the part of the contractor, its agent or employee, as defined in (b) below, and result in conviction (including conviction entered on a plea of nolo contendere), judgment against the contractor, its agent or employees, or decision to debar or suspend, or are resolved by consent or compromise.
*990 32 C.F.R. § 15-205.52(a) (1983). The regulation defined the term “costs” to include all expenses “incurred prior to the commencement of the formal judicial or administrative proceedings which bear a direct relationship to the proceedings.” Id. § 15-205.52(c). The notice accompanying that provision explained that it was intended to disallow reimbursement of costs “incurred by a contractor in the defense of criminal or civil fraud proceedings ... when the action, brought by the Government, results in a conviction or judgment against the contractor.... ” 48 Fed.Reg. 3457 (Jan. 25, 1983). The following year, the language from the DAR was adopted as part of the FAR. 48 C.F.R. § 31.205-47 (1983).
From the plain language of the 1983 FAR provision, which disallowed all costs incurred in connection with the defense of any criminal, civil, or administrative proceeding brought against the contractor if the charges that were the subject of the proceeding involved fraud and resulted in a conviction of the contractor or its agents or employees, it is clear that the provision barred recovery of all costs incurred in the entire criminal or civil proceeding or action, not just those costs that were associated with or could be attributed to a particular charge or count on which a fraud-based judgment was entered. This court stated as much in Brownlee v. DynCorp, 349 F.3d 1343, 1349 (Fed.Cir.2003), where the court wrote, “At least since 1983, the FAR has barred the recovery of legal fees as a cost under government contracts if those fees were incurred in defense of a fraud proceeding that resulted in a conviction.” [1]
2. In 1985, Congress adopted legislation that had the effect of modifying the FAR’s “Defense of Fraud Proceedings” provision. As originally introduced, the Defense of Fraud Proceedings clause in the 1985 Act disallowed costs incurred in “[djefense of any fraud proceeding brought by the United States, unless the contractor is found not to be liable in any way for the alleged fraud.” H.R. 2397, 99th Cong., 1st Sess. (1985). In committee, that language was modified as a matter of form to read “[cjosts incurred in defense of any fraud proceeding brought by the United States where the contractor is found liable for fraud or has pleaded nolo contendere to a charge of fraud.” Full Committee Consideration of H.R. 24,19 et al.: Hearings before the H. Comm. on Armed Services, 99th Cong., 73-74 (1985); 131 Cong. Rec. 17,104-95 (1985). Both the original and amended forms of that proposed legislation were unambiguous regarding the meaning of the term “proceeding”; it was clear in both versions that the provision would disallow all costs for any investigation or litigation that led to a finding of liability for fraud or a plea of nolo conten-dere to a charge of fraud.
During the House debate on the 1985 Act, an amendment was offered to the Defense of Fraud Proceedings provisions. The sponsor of the amendment described it as intended to “strengthen [the provisions] considerably” and to “strictly proscribe those instances in which defense contractors are able to charge the American public for their legal fees.” 131 Cong. Rec. 17108-09 (1985). That amendment contained what ultimately became the final text of the provisions. It made unallowa-ble
[c]osts incurred in defense of any civil or criminal fraud proceeding or similar proceeding (including filing of any false certification) brought by the United States *991 where the contractor is found liable for fraud or has pleaded nolo contendere to a charge of fraud or similar proceeding (including filing of false certification).
That language, with only minor changes, was enacted. The provision that applied to the Department of Defense was codified at 10 U.S.C. § 2324(e)(1)(C) (Supp. V 1987), and the identical provision that applied to the Department of Energy was codified at 42 U.S.C. § 7256a (Supp. V 1987).
It was the floor amendment that added the confusing language that ultimately made its way into the contracts at issue in this case. It is clear from the context in which that language was added to the 1985 Act, however, that the amendment was not intended to modify the original language of the Defense of Fraud Proceedings provisions in a way that would increase the scope of allowable contractor costs in fraud cases. Instead, the purpose of the amendment was the opposite: It was designed to extend the prohibition against recovery, which had been limited to cases of fraud, to include cases involving conduct similar to fraud, including fifing a false certification. The legislative history supports that interpretation of the statute, and later events would provide further evidence for that view.
8. The 1985 Act authorized the Secretary of Defense and the Secretary of Energy to promulgate regulations implementing the Defense of Fraud Proceedings provisions of that Act. 99 Stat. 683, 775, codified at 10 U.S.C. § 2324(e)(2)(A) (Supp. V 1987) and 42 U.S.C. § 7256a(b) (Supp. V 1987) (now found at 50 U.S.C. § 2781(a)(3)). In accordance with that authorization, the pertinent FAR provision was modified in 1986 in response to the new statute. Only one change of substance was made in the regulation, and that change tracked the purpose of the floor amendment to the 1985 Act by extending the prohibition on the allowance of costs incurred in proceedings involving fraud to cover proceedings involving offenses similar to fraud, including fifing a false certification. Thus, the pre-1985 version of the regulation referred to proceedings “when the charges, which are the subject of the investigation, proceedings, or prosecution involve fraud on the part of the contractor.” 32 C.F.R. § 15-205.52(a) (1983) (emphasis added). The post-1985 version referred to proceedings “when the charges, which are the subject of the investigation, proceedings, or prosecution involve fraud or similar offenses (including filing of a false certification) an the part of the contractor.” 48 C.F.R. § 31.205-47 (1986) (emphasis added). From that text, it is clear that the revised regulation continued to use the term “proceedings” broadly, to refer to the entire case in which fraud charges were brought, not simply the fraud charges themselves.
In Brownlee v. DynCorp, 349 F.3d 1343 (Fed.Cir.2003), this court agreed with that characterization of the 1986 FAR provision and held that the term “proceeding” in that provision should be read broadly to render unallowable all costs of the litigation, not just those attributable to the count on which a conviction was entered. The court stated: “Furthermore, contrary to the contractor’s contention, the regulation does not simply disallow the costs of defending the employee (which the contractor excluded from its claim); it disallows all costs of the proceeding, including the costs of defending the contractor, even though the contractor itself was not convicted.” Id. at 1352.
The language of the 1986 amendment to the FAR is highly significant. It is the regulatory interpretation of the statutory language in the 1985 Act. It demonstrates *992 that the regulatory body responsible for administering the statute interpreted the statutory language not to have broadened the allowability of costs in fraud proceedings, but to have simply extended the prohibition on allowability from cases involving fraud to cases involving fraud and offenses similar to fraud, including filing a false certification. The Department of Energy proposed an identical regulation, which was subsequently incorporated in the DEAR. See 48 C.F.R. § 970.3102-20 (1987).
This court has recognized that FAR provisions interpreting congressional enactments are entitled to deference under the principles of Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 887, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). See DynCorp, 349 F.3d at 1354 (“The FAR regulations are the very type of regulations that the Supreme Court in Chevron and later cases has held should be afforded deference.”). If a statute is ambiguous, as is plainly true of the 1985 Act, Chevron dictates that the interpretation of the statute by the agency charged with its administration must be respected unless that interpretation is unreasonable. The regulatory interpretation of the statute, as reflected in the 1986 provision of the FAR and the identical provision of the DEAR, are consistent with the pre-1985 regulation and the legislative history of the 1985 Act and cannot fairly be deemed unreasonable. Thus, deference is owed to the agencies’ interpretation of the ambiguous language of the 1985 Act. Applying that interpretation to the corresponding contract language requires that clause (e)(32) be construed to disallow the costs of the entire proceeding that leads to fraud convictions or findings of liability, not just the costs that are allocable to the particular counts on which the contractor was found guilty or liable.
4. In 1988, Congress made two more pertinent changes to the statutes governing the allowability of costs relating to proceedings involving fraud and other criminal conduct. First, in the National Defense Authorization Act, Fiscal Year 1989, Pub.L. 100-456, 102 Stat.1918 (1988) (“NDAA”), Congress added a provision to section 2324(e) of Title 10 that disallowed “costs incurred in connection with any civil, criminal, or administrative action” resulting “in a determination that a contractor has violated or failed to comply with any Federal law or regulation” if the action resulted in a conviction (in the case of a criminal action) or a monetary penalty and a determination that the violation was knowing or willful (in the case of a civil or administrative action), or a decision to debar or suspend the contractor or to terminate the contract if the decision was based on a determination that the violation was knowing or willful. 102 Stat.2023-24.
Second, Congress enacted the Major Fraud Act, Pub.L. 100-700, 102 Stat. 4631 (1988), a part of which embodied the same prohibition that had been adopted earlier that year in Public Law 100 — 456. The new statutory language, which was codified at 10 U.S.C. § 2324(k), largely tracked the NDAA, except that it used the term “proceeding” in place of the term “action” throughout. Thus, as amended, the statute rendered unallowable those “costs incurred by a contractor in connection with any criminal, civil, or administrative proceeding” if the proceeding related to a violation of federal law and resulted, “[i]n the case of a criminal proceeding[,]” in “a conviction (including a conviction pursuant to a plea of nolo contendere).” Congress’s intent to use the term “proceeding” broadly was clear, not only from the language of the operative provisions, but from the definitional section of the statute, which stated that the term “proceeding” “includes an investigation.” 10 U.S.C. § 2324(k)(6)(A). This court so ruled in Rumsfeld v. General *993 Dynamics Corp., 365 F.3d 1380, 1386 (Fed.Cir.2004). The court in that case held that the term “proceeding” in section 2324(k) “includes all claims or causes of action within a particular case,” not just a single count or claim on which a finding of fraud has been made. Rejecting an argument similar to the argument made by Boeing in this ease, the court stated simply: “Congress could have drafted section 2324(k) such that legal costs of a proceeding are unallowable on a claim-by-claim basis; it did not.” Id.
There is no indication that, when Congress accorded the term “proceeding” a broad meaning in the Major Fraud Act, it intended for the term to have a different meaning from the one it had in the 1985 Act at issue here. In fact, Congress placed the two provisions together in the same section of title 10 of the U.S.Code. Thus, the term “proceeding” was (and still is) found in both subsections (e) and (k) of section 2324, with subsection (e) carrying forward the language of the 1985 Act and subsection (k) embodying the language of the 1988 Act. It is well established that identical words used in different parts of the same statute are presumed to have the same meaning. Taniguchi v. Kan Pacific Saipan, Ltd.,—U.S.-, 132 S.Ct. 1997, 2004-05, 182 L.Ed.2d 903 (2012); Desert Palace, Inc. v. Costa, 539 U.S. 90, 101, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); Richard v. United States, 677 F.3d 1141, 1147 (Fed.Cir.2012). Boeing’s interpretation of the term “proceeding” in the contracts, which is taken from the identically worded language of 10 U.S.C. § 2324(e), would require the court to construe the term “proceeding” narrowly in section 2324(e) and broadly in subsection 2324(k), contrary to that presumption.
Where all this leads is the following: The language of the 1985 Act (and therefore the contract language that was taken from that Act) is ambiguous. Other evidence as to the meaning of the Act, however, all points in the direction urged by the government: that the term “proceeding” refers to the entire matter or case at issue, not simply to those claims or counts on which liability is based. The FAR provisions that predated the 1985 Act used the term “proceeding” broadly. The legislative history of the 1985 Act indicates that the amendment that added the problematic language was intended to broaden the scope of the unallowability provision, not to narrow it. The post-1985 regulations implementing the 1985 Act employed a broad meaning of the term “proceeding” as part of the agency’s official interpretation of the statutory language; under Chevron, that interpretation is binding unless it is unreasonable, which it clearly is not. And in the 1988 Major Fraud Act, Congress gave the term “proceeding” a broad definition, one that presumptively applies to the same term that is used in the portion of the same statutory section that is at issue in this case. In light of all these considerations, I am satisfied that the term “proceeding,” as used in the 1985 Act and the contracts at issue in this case, should be given the broad definition urged by the government, not the narrow definition urged by Boeing.
B
The court bases its interpretation of clause (e)(32) in part on its conclusion that a broad interpretation of that clause would conflict with the Environmental Costs Clause of the contracts, clause 54(d)(16). But the Board provided a complete and convincing answer to that argument. Clause 54(c) of the contracts specifically provides that allowable costs “shall not include the cost of any item described as unallowable in paragraph (e) [including clause (e)(32) ].” Therefore, as the Board explained, clause (e)(32), where it applies, “is a specific exception to the allowability of ‘all costs’ covered by clause 54(d)(16).” *994 Importantly, clause (e)(32) bars the allowance of costs only where the proceeding involves a charge or fraud and results in liability or conviction on a charge of fraud. The realm of potential conflict between clause (e)(32) and the Environmental Costs Clause is therefore quite limited; outside the context of fraud-based proceedings, clause (e)(32) does not in any way conflict with the scope of the Environmental Costs Clause. For that reason, the analysis in this court’s decision in Abraham v. Rockwell Int’l Corp., 326 F.3d 1242 (Fed.Cir.2003), is not applicable here. In that case, the court rejected the government’s argument for the unallowability of certain costs, as the government’s argument would have effectively limited the Environmental Costs Clause to make it “entirely inapplicable to all proceedings brought under the federal environmental laws, an area that the clause was explicitly drafted to cover.” Id. at 1253. In this case, clause (e)(32) would have no such sweeping effect. Instead, it would have the far more limited effect of making the Environmental Costs Clause inapplicable to actions based on contractor fraud and resulting in the contractor’s liability for fraud. That narrower role for clause (e)(32) is significant; as the court in Abraham pointed out, the government’s argument for restricting the scope of the Environmental Costs Clause “would make sense if the result were to partially limit the coverage of the Environmental Costs Clause.” Id.
Beyond that, the “conflict” rationale proves too much, as the same conflict argument would apply to costs incurred on individual fraud counts on which a contractor is found liable. After all, if the Environmental Costs Clause covers all costs of litigating fraud claims relating to the environment on which the contractor prevails, the clause should extend equally to claims on which the contractor is found liable. Thus, there is potential conflict between the two clauses even under the narrow interpretation of the term “proceeding” that the court endorses. For that reason, the “conflict” argument does not provide useful guidance as to how the term “proceeding” in clause (e)(32) should be interpreted. Because the statutory and regulatory history bears directly on that question and supports the government’s interpretation of clause (e)(32), I would accord the term “proceeding” that broader interpretation and remand this case to the Board for reconsideration of the allowability issue in light of that interpretation. I therefore respectfully dissent.[2]

. The FAR applies to DOE contracts, as supplemented by the Department of Energy Acquisition Regulation ("DEAR”).

. The Board allowed Rockwell to recover all of its costs that pre-dated the government's intervention in the Stone litigation on the ground that Rockwell was not found liable on any of the claims that were asserted prior to the filing of the amended complaint. Based on my interpretation of clause (e)(32), I would not uphold the Board's ruling on that ground but would direct the Board on remand to determine whether the portion of the Stone litigation that pre-dated the government's intervention should be treated as a separate proceeding for purposes of clause (e)(32) or as part of a single ongoing proceeding.