DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| CACI International, Inc. | ) ASBCA No. 63663 |
| | ) |
| Under Contract No. N00189-12-D-Z001 | ) |

| | |
|---|---|
| APPEARANCES FOR THE APPELLANT: | Tyler Evans, Esq.<br>John F. O'Connor, Esq.<br>Caitlin T. Conroy, Esq.<br>  Steptoe LLP<br>  Washington, DC |
| APPEARANCES FOR THE GOVERNMENT: | Samuel W. Morris, Esq.<br>  DCMA Chief Trial Attorney<br>Adrianne L. Goins, Esq.<br>Scott Reid, Esq.<br>  Trial Attorneys<br>  Defense Contract Management Agency<br>  Chantilly, VA |

OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS ON
THE PARTIES' CROSS-MOTIONS FOR RECONSIDERATION

Pending before the Board are cross-motions for reconsideration filed by appellant, CACI International Inc. (CACI) and the Defense Contract Management Agency (DCMA or government). In our opinion dated May 6, 2025, we denied the government's motion to dismiss, treated as a motion for summary judgment, and granted in part CACI's motion for summary judgment. In short, we held that CACI's claimed Iraqi litigation costs were not barred by a 2007 settlement agreement between CACI Premier Technology (CACI PT) and the Department of the Interior (DOI) and denied the remainder of CACI's motion. Familiarity with that decision is assumed. At the request of the parties, the Board held oral argument on the cross-motions for reconsideration on February 11, 2026.

In its motion for reconsideration, CACI, raises new arguments and repeats the arguments from its motion for summary judgment, arguing once again that litigation costs are generally allowable, and that the tort claims at issue are not "similar" to the enumerated unallowable costs. The government's motion for reconsideration similarly raises new arguments and repeats arguments from its motion to dismiss, that we should have found issue preclusion based on a District Court holding, and that the release from the settlement between CACI PT and DOI precludes CACI's Iraqi litigation costs

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

at issue in this appeal. As neither motion identifies mistaken findings of fact or errors of law, we deny both motions.[*]

## DECISION

### I. Standard of Review

A motion for reconsideration is not the place to present arguments previously made and rejected. "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014) (quoting *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)). Moreover, "[m]otions for reconsideration do not afford litigants the opportunity to take a 'second bite at the apple' or to advance arguments that properly should have been presented in an earlier proceeding." *Dixon*, 741 F.3d at 1378; *see also Avant Assessment, LLC*, ASBCA No. 58867, 15-1 BCA ¶ 36,137 at 176,384. On the other hand, if we have made mistakes in the findings of fact or conclusions of law, or by failing to consider an appropriate matter, reconsideration may be appropriate. *See Robinson Quality Constructors*, ASBCA No. 55784, 09-2 BCA ¶ 34,171 at 168,911; *L&C Europa Contracting Co.*, ASBCA No. 52617, 04-2 BCA ¶ 32,708 at 161,816. The Board has summarized the standard for reconsideration by stating "[i]n short, if we have made a genuine oversight that affects the outcome of the appeal, we will remedy it." *Relyant, LLC*, ASBCA No. 59809, 18-1 BCA ¶ 37,146 at 180,841. Here, as in *Relyant*, no such mistakes have been identified.

### II. CACI's Motion For Reconsideration

CACI's motion for reconsideration generally repeats the legal argument from its motion for summary judgment with new facts from the second *Al Shimari* jury trial that were not included in CACI's original motion.

### A. The Board Has Already Rejected CACI's Legal Argument

CACI's motion for reconsideration argues that legal costs are generally allowable unless there is an exception, and that the *Al Shimari* legal costs are not "similar" to the exceptions previously recognized by the courts (app. mot. recon. at 6-10). We fully considered these arguments in our opinion. We rejected CACI's argument that legal costs are generally allowable unless specifically excluded by Federal Acquisition Regulation (FAR) 31.205-47 noting that the Court of Appeals for the Federal Circuit had rejected this same argument in *Boeing North American* (*CACI*

---

[*] The Chairman has denied the government's request that these appeals be referred to the Board's Senior Deciding Group.

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

*Int'l Inc.*, ASBCA No. 63663, slip op. at 21-22 (May 6, 2025)(quoting *Boeing N. Am., Inc. v. Roche*, 298 F.3d 1274, 1285 (Fed. Cir. 2002))). We also held that the *Al Shimari* costs were "similar" to other unallowable costs. Here, CACI cites to the same cases that it relied upon in its motion for summary judgment. CACI again argues that the *Al Shimari* costs are not "similar" to other unallowed costs because it is private litigation with penalties paid to the plaintiffs and not the government (tr. 35). We reviewed those cases in our opinion and nothing in CACI's motion for reconsideration causes us to reconsider our analysis.

      B.   The Board Will Not Consider CACI's New Arguments Raised For The First Time In Its Motion For Reconsideration

CACI's motion for reconsideration also introduces new argument regarding the *Al Shimari* litigation. In its original motion for summary judgment, CACI argued that legal fees incurred in defending against the *Al Shimari* litigation were allowable because actions brought pursuant to the Alien Tort Statute (ATS) were not "similar" to unallowable costs because the litigation was brought in an individual capacity and damages would not be paid to the government (app. mot. s.j. at 4-5, 17-23). In other words, CACI's argument was that the litigation costs were allowable because *any* action brought pursuant to the ATS would be different from the types of litigation cost that have previously been found to be unallowable.

In its motion for reconsideration, CACI essentially seeks summary judgment on a different question – whether the *Al Shimari* costs are unallowable based on the *specific* facts of that case. CACI devotes a significant portion of its motion for reconsideration addressing new information, not included in its original motion for summary judgment, regarding the procedural history of the *Al Shimari* litigation, as well as an expanded discussion of the history of the ATS. Specifically, CACI argues that the *Al Shimari* judgment currently on appeal "rests on a unique and unprecedented application of two levels of vicarious liability" (app. mot. recon. at 2). According to CACI, the district court in the second *Al Shimari* trial granted CACI judgment on the plaintiff's claims for aiding and abetting torture, and cruel, inhumane, or degrading treatment (CIDT) (*id.* at 1). CACI notes that the district court's actions occurred following the conclusion of briefing in this appeal (app. reply at 2 n.8). However, CACI did not seek to amend its motion for summary judgment, and the Board decided the question presented in CACI's motion for summary judgment. Specifically we denied CACI's motion for summary judgment that any litigation costs incurred in defending against a claim pursuant to the ATS were allowable, based on the factual situation then before us, which included allegations of violation of international law, including aiding and abetting torture (slip op. at 23). Whether a civil damages award based upon two-levels of vicarious liability is "similar" to the costs disallowed pursuant to FAR 31.205-47(b) is a different question, and one requiring full briefing by the parties rather than being raised for the first time in a motion for reconsideration.

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

CACI also argues that 18 of 20 claims contained in the *Al Shimari* litigation have been resolved in CACI's favor, and thus the Board should only look at the two remaining claims asserting co-conspirator liability in determining allowability for the litigation costs (app. mot. for recon. at 1-2). As noted above, this is a different question from that posed in CACI's motion for summary judgment. That motion asked the Board to enter judgment that litigation costs for actions brought pursuant to the ATS were, in essence, *per se* allowable, if not expressly made unallowable by a specific FAR provision. We decline to consider CACI's new justification for allowability of its legal costs.

CACI additionally suggests that the Board should apportion the litigation costs, and allow 90% of the costs (based on 18 of 20 claims being resolved in CACI's favor) even if we find the litigation costs to be "similar" to unallowable costs (*id.*). The government argues that the Federal Circuit rejected this argument (gov't resp. at 7 n.4 (citing *Rumsfeld v. General Dynamics Corp.*, 365 F.3d 1380 (Fed. Cir. 1380, 1386 (Fed. Cir. 2004)). CACI's apportionment argument was not raised in the summary judgment briefing and we decline to consider it for the first time on reconsideration. *Dixon*, 741 F.2d at 1378.

CACI also makes new legal arguments regarding the Torture Victims Prevention Act (TVPA), 28 U.S.C. § 1350 note, and the history of the ATS as likely only covering offenses against ambassadors, violations of safe conduct and prize capture and piracy (app. mot. for recon. at 5). Once again these are new arguments not raised in the summary judgment briefing. We decline to consider the arguments.

For the reasons stated above, we deny CACI's motion for reconsideration.

III.  The Government's Motion for Reconsideration

The government seeks reconsideration of the Board's decision that CACI's claim for inclusion of *Al Shimari* litigation costs in its overhead rate was not barred by issue preclusion, and the Board's decision that a 2007 settlement agreement between the Department of the Interior (DOI) and CACI PT, settling litigation pending before the Civilian Board of Contract Appeals (CBCA), did not release CACI International, Inc.'s claim against the DCMA.

A.  The Government Misinterprets The Requirements For Issue Preclusion

In our decision, we held that CACI's claimed overhead costs were not barred by the doctrine of issue preclusion, based upon the Eastern District of Virginia's holding that CACI's claims of equitable legal theories of indemnification, exoneration, and contribution and the contractual theory of breach of the duty of good faith and fair dealing, asserted in that action, were barred by the 2007 settlement agreement (slip op.

4

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

at 20-21). The government asserts that the Board erred in holding that CACI's claimed overhead costs were not unallowable pursuant to the doctrine of issue preclusion. According to the government, the Board erred in three ways: by failing to recognize that the Board and the district court were reviewing the same issue; by incorrectly determining that the district court was considering direct costs; and by ignoring the DCMA's role in setting overhead rates for all contracts (gov't mot. at 4-7).

The government's first argument is that the Board's decision is inconsistent with its own findings, because we commented that the scope of the 2007 release was "central to resolving many of the issues in the pending motions" (slip op. at 3). According to the government, the scope of the release was also central to the district court's holding, and thus, we should find issue preclusion to exist (gov't mot. at 4-5). As we noted in our decision, issue preclusion requires that "the issue previously adjudicated [be] identical with that now presented" (slip op. at 20, quoting *Thomas v. Gen. Servs. Admin.*, 794 F.2d 661, 664 (Fed. Cir. 1986). While both actions involve the interpretation of the 2007 settlement agreement, they do not involve the same types of claims, with the district court action considering equitable legal theories of indemnification, exoneration, and contribution and the contractual theory of breach of the duty of good faith and fair dealing (slip op. at 20) and the pending litigation involving the allowability of indirect overhead costs.

The government's second alleged error is that the Board incorrectly determined that the district court action was considering direct costs (gov't mot. at 5-6). The Board's reference to "direct costs" in the decision was a short-hand reference to costs that would have been directly allocable to the DOI task orders because they were "liabilities . . . aris[ing] out of the performance of" the task orders. FAR 52.228-7(c)(2). The district court action involved equitable legal theories of indemnification, exoneration, and contribution and the contractual theory of breach of the duty of good faith and fair dealing. These legal theories of recovery directly arise out of the performance of the DOI task orders. Because the DOI task orders have been closed-out, the costs cannot, today, be charged directly to the task orders. However, that does not change the fact that costs at issue in the district court litigation are different from legal fees being charged to overhead in this action. Legal fees are considered to be a cost of doing business and are accordingly assigned to overhead cost pools. In fact, DCMA recommended treating prior litigation costs as indirect costs (R4, tab 21 at GSR4-479). The treatment of the costs as direct or indirect is an issue of *allocation* – that is, to what cost objectives, and thus contracts, should the costs be allocated.

The government asserts a third error that the Board misconstrued the legal issue to be determined and ignored DCMA's role as the cognizant federal agency responsible for CACI's indirect costs (gov't mot. at 6-7). As explained above, the district court was considering costs that could be directly charged to the contract. The

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

Board's decision perhaps could have been more clear in explaining that this difference in allocability of the costs was the reason why issue preclusion was not applicable when it stated that "*allowability* of these costs is a separate question" (slip op. at 21). As a general rule, costs must be allocated before determining their allowability. The Board's decision did not state that allowability of the costs was separate from CACI's indirect rates as asserted by the government (gov't mot. at 6). The government further argues that the Board's decision "ignored DCMA's role" in setting indirect cost rates (*id.*). Again, the government misinterprets the Board's decision. Once the allocation of the costs has been resolved, the allowability of the costs will be at issue. The Board recognizes that DCMA is the cognizant agency for CACI's indirect cost rates.

> B. The Government's New Arguments Do Not Provide A Basis For Interpreting The Settlement Agreement As Applying To CACI's Overhead Costs

The government also raises a number of new arguments in an attempt to establish that the settlement agreement encompassed CACI's legal costs. The government first repeats its argument that a general release under a government contract ends all matters related to the contract (gov't mot. at 9-11). We deny this argument for the reasons stated in our decision.

The government next argues that the Board misinterpreted the scope of the release in the 2007 settlement agreement. Here, the government's argument is a mish-mash of arguments, mostly new, that ignore all binding authority regarding privity of contract and co-obligors. The government starts with an argument, without *any* citation to authority or the administrative record, that the Department of Defense (DoD) was "*both* the successor to, and co-obligor with, DOI for the task orders" (gov't mot. at 12). Curiously, the government also dismisses our analysis of Federal Circuit precedent in *Holland v. United States*, 621 F.3d 1366 (Fed. Cir. 2010) by asserting that the Federal Circuit "was mistaken to conclude there was no controlling federal law" (gov't mot. at 12 n.12). Even if we were to conclude that the Federal Circuit erred in its analysis, we are still required to follow precedent.

The government first takes issue with the Board's statement that the DoD was not mentioned in the settlement agreement (*id.*). The government points to the fact that the settlement agreement required CACI to certify that it delivered some government property to the Army as proof that DoD was somehow a party to the settlement. Admittedly, a DoD entity, the Army, was mentioned in the agreement, but it was not a party to the agreement, and did not have obligations pursuant to the agreement. Instead, CACI was required to certify that it turned some property over to the Army. The settlement did not place any obligation on the Army. In fact, the settlement agreement did not even require the Army to sign a receipt for the property. Even if DoD had some undefined contractual right pursuant to the settlement

6

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

agreement, that right would be limited to the value of the property that CACI was to turn-over to the Army. Moreover, the government doesn't allege that CACI failed to deliver the property, and the statute of limitation for such a claim has long passed.

The government next makes the new argument that it was the "successor agency" to DOI and that as "successor" it somehow is entitled to enforce the settlement agreement (gov't mot. at 13-14). However, the record is clear that DOI terminated its task orders so that they could be replaced by DoD task orders (*id.* at 13-14, citing R4, tab 18 at GSR4-414). That is, the contractual relationship between CACI and DOI ended and a new contractual relationship was established between CACI and DoD. The government cites no legal authority for its novel argument that the termination of one contract and creation of a new contract with a different federal agency is somehow the equivalent of a novation changing the responsible party on a single existing contract. The government admits that the contracts were not novated (tr. 52). Moreover, the government's "successor" argument was not raised in its motion to dismiss and we need not consider it here. *Dixon*, 741 F.3d at 1378. To the extent we would consider it, it is denied.

The government also contends that it is a "co-obligor" with DOI on the task orders. The government cites the definition of co-obligor from Black's Law Dictionary as being "bound jointly with another or others in a bond or obligation" (gov't mot. at 13 n.14), but fails to explain how or why DOI and DoD were "bound jointly." At oral argument, the government pointed to the Army's transfer of funds to the DOI by Military Interdepartmental Purchase Request (MIPR) as proof that the Army was a co-obligor (tr. 51). Details concerning the payment of contract amounts to CACI do not appear to be in the record, but logically, the Army would not be transferring funds by MIPR to the DOI if the Army had paid CACI directly. We fail to see how the transfer of funds by MIPR makes the Army a co-obligor to the contract. The government also cites a number of sources regarding the interagency procurement process but does not cite any authority for its novel proposition that a requiring agency is a party to the contract between the ordering agency and the contractor.

The government also argues that it is a third-party beneficiary "because the [settlement] agreement reflects the express intention of DOI and CACI to benefit DOD by transferring 'Government Property' and CACI's work to 'two follow-on bridge contracts' with the Army" (gov't mot. at 17 n.20). "In order to prove third party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly." *Glass v. United States*, 258 F.3d 1349, 1354, *opinion amended on reh'g on unrelated grounds,* 273 F.3d 1072 (Fed. Cir. 2001). As noted above, the only reference to DoD in the settlement agreement was a requirement that CACI certify to DOI to that it returned some government property to the Army. There

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

is no indication that the settlement agreement was intended to benefit the DoD, let alone, an intent to benefit DoD directly.

CONCLUSION

For the reasons stated above, the parties' cross-motions for reconsideration are denied.  The parties are directed to submit a joint status report with a proposed schedule for further proceedings within 30 days of the date of this opinion.

Dated:  March 10, 2026

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63663, Appeal of CACI International, Inc., rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals